UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 22-3050 _____     _____ Caption [use short title] _____

Motion for: Non-Party Doe 171's Redacted Motion for Stay

Pending Appeal of Ore Tenus Order Unsealing Order

_____

Set forth below precise, complete statement of relief sought:

Non-party Doe 171 requests that this Court maintain the district

court's stay pending this appeal of its unsealing order

and allow the redaction of sensitive information consistent

with the district court's sealing orders and to preserve the

ultimate relief sought in this appeal,

as will be explained in a forthcoming motion.

Giuffre v. Maxwell

MOVING PARTY: Jane Doe 171 _____     OPPOSING PARTY: Intervenor-Appellee, Julie Brown & The Miami Herald, Plaintiff-Appellee Virginia Giuffre

☐ Plaintiff          ☐ Defendant

☑ Appellant/Petitioner     ☐ Appellee/Respondent

MOVING ATTORNEY: Jeffrey W. Gutchess _____     OPPOSING ATTORNEY: Christine Walz (for Intervenor Miami Herald & Brown)

[name of attorney, with firm, address, phone number and e-mail]

AXS Law Group, PLLC     Holland & Knight 31 West 52nd St New York, NY 10019 (212) 385-9010 christine.walz@hklaw.com

2121 NW 2nd AVE, Suite 201 Miami, FL 33127     Sigrid McCawley (for Giuffre) - Boise Schiller & Flexner LLP

(305)297-1878 jeff@axslawgroup.com     401 E. Las Olas Blvd. Ste. 1200 Ft. Lauderdale, FL 333301 (951)356-0011 smccawley@bsfllp.com

Court- Judge/ Agency appealed from: United States District Court (SDNY), Hon. Loretta A. Preska

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain):_____
_____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?     ☐ Yes ☐ No
Has this relief been previously sought in this court?   ☐ Yes ☐ No
Requested return date and explanation of emergency: _____
_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes  ☐ No  ☑ Don't Know

_____
_____
_____

Is oral argument on motion requested?  ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?  ☐ Yes ☑ No If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Jeffrey W. Gutchess _____  Date: 12-2-2022 _____  Service by: ☑ CM/ECF  ☐ Other [Attach proof of service]

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

CASE NO. 22-3050

VIRGINIA GIUFFRE,

  *Plaintiff,*

v.

GHISLAINE MAXWELL,

  *Defendant,*

v.

JANE DOE 171,

  *Objector-Appellant,*

v.

MIAMI HERALD COMPANY and
JULIE BROWN,

  *Intervenor-Appellee.*

_____/

## NON-PARTY DOE 171's REDACTED MOTION FOR
## STAY PENDING APPEAL OF *ORE TENUS* UNSEALING ORDER[1]

_____

[1] Non-Party Doe 171 respectfully moves to submit this motion with confidential, private, and highly sensitive information in redacted form, consistent with the sealing orders entered by the district court and essential to preserve the ultimate relief sought in this appeal, in light of the peculiar considerations that are unique to this case to be set forth in a forthcoming brief that will be promptly filed on this Court's docket.

Non-party Doe 171 respectfully requests that this Court extend the district court's stay of an *ore tenus* unsealing order pending this appeal. *See* Nov. 18, 2022 Hr'g Tr. ("**Hr'g.Tr.**") (*ore tenus* unsealing order); Doc. 1275 (order granting temporary stay pending appeal); Doc. 1281 (order extending stay).

## INTRODUCTION

██████████████████████████████████████████

█████████████████████████████████████ To preserve what remains of her mental health, physical security, and overall well-being, Doe 171 has foregone significant monetary offers by refusing to disclose any details about the ordeal that Doe 171 endured over 20 years ago, which are the subject of the proceedings below. █████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

In a November 18, 2022 *ore tenus* unsealing order, however, the district court concluded that it was not necessary to protect Doe 171's identity as a non-party because "public sources"— ██████████████████████████ ████████████████████████ —had already supposedly disclosed all of the information that is now subject to unsealing. Hr'g.Tr.:6. Although the district court stayed its unsealing order as to the documents pertaining to Doe 171, that stay is contingent upon Doe 171 requesting a further extension from this Court no later than today. Doc.1281. Because the district court's order not only violated Doe 171's due process rights, but was also based on the clearly erroneous factual premise that the information subject to unsealing has already been disclosed, and failed to account for the ████████████████ implications raised by an innocent non-party seeking to protect the most intimate rights of privacy, Doe 171 respectfully requests that this Court extend the district court's temporary stay pending the resolution of this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

This Court recently determined that the district court below was obligated to unseal the summary judgment record, subject to "minimal[] redact[ions]," including "the names of alleged minor victims of sexual abuse," as well as "deposition responses concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong presumption of

continued confidentiality." *Brown v. Maxwell*, 929 F.3d 41, 48 n.22 (CA2 2019); *accord id*. at 54 (Pooler, J., dissenting in part) ("I join in the Court's opinion in every respect but one: the decision to unseal the summary judgment record ourselves," rather than allowing the district court "to communicate with the parties and any nonparties whose privacy interests might be affected by unsealing").

With respect to any remaining sealed materials on its docket, however, this Court instructed the district court to conduct an "individualized review" as to each document. *Id.* at 51. This Court expressly "emphasize[d] the courts' responsibility to exercise the[] powerful tools" at its disposal to "protect[] the integrity of the judicial process" and prevent their dockets from "'becom[ing] a vehicle for improper purposes'" that "exacerbate the[] harms to privacy and reputation" that can result when "damaging material irrevocably enters the public record." *Id*. at 47 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *accord id*. at 53 ("District courts should exercise the full range of their substantial powers to ensure their files do not become vehicles for defamation"). Moreover, this Court underscored the need for the district court and the parties to "notify[] any outside parties whose privacy interests might be implicated by the unsealing." *Id*. at 51.

On remand, it appears that this Court's admonitions were compromised, at least as far as Doe 171 was concerned. To begin, Doe 171 was neither provided any

notice nor any opportunity to object before the district court unsealed several tranches of documents that identified her by name ████████████████.

Then, in February 2022, Plaintiff finally sent a letter directing the district court to turn its attention to a collection of non-parties which included Doe 171 and proposed a briefing schedule that the district court adopted without any notice to Doe 171. One month later, Plaintiff acknowledged that she had "mistakenly identified" Doe 171's "Doe number" in her prior letter, meaning that Doe 171 had not received any notice of the potential unsealing until the same day that the parties' opening briefs were due. Doc.1247:15 n.11. Specifically, it was not until Friday afternoon on March 18, 2022 that Doe 171's ██████████ received a conclusory email from Plaintiffs' counsel advising them of their clerical error and informing them for the first time that they intended to "submit[] a brief today addressing Doe 171's objections." Indeed, Doe 171 had not been informed of her "Doe number" until March 2022.[2]

Plaintiff then demeaned Doe 171's "single[-]paragraph objection" without making it clear to the district court that Plaintiff's clerical error had left Doe 171 completely in the dark about any potential unsealing of any court records until earlier that very same day. Doc. 1247:15. Plaintiff also pointed to Doe 171's purported

---

[2] It is not clear whether Plaintiff's same clerical error misidentifying Doe 171 might explain why they were not provided notice or an opportunity to object to the prior rounds of disclosures ████████████████████████.

"acknowledge[ment] that their name is already in the public domain" as an additional basis for unsealing even more materials pertaining to Doe 171. *Id.*:16. Plaintiff, however, did not address the fact that the district court had previously unsealed several tranches of documents identifying Doe 171 by name without providing any notice or any opportunity to object, which might have explained the appearance of Doe 171's name in the public domain. Nor has Plaintiff ever explained why the purported appearance of Doe 171's **name** in the public domain would now justify unsealing documents revealing additional **falsehoods** about Doe 171 that have never appeared in the public domain before.

In the interest of the fullest possible disclosure under the circumstances, undersigned counsel notes that Doe 171 ▓▓▓▓▓▓▓▓ subsequently submitted *ex parte* correspondence to the district court ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Those letters do not appear on the district court's docket, and thus it is not clear whether the district court gave those letters any weight in its determination to unseal the documents that are the subject of this appeal, nor is it clear whether those letters are part of the record on appeal. Doe 171 and undersigned counsel are currently consulting with ▓▓▓▓▓▓ to determine

whether and to what extent it may be necessary or appropriate to supplement the record on appeal to include those letters without waiving any rights ████████ ████████ a task which they could not complete in the short amount of time between being retained to represent Doe 171 in this matter approximately one week ago and the deadline to file this emergency motion on today's date.

On November 18, 2022, the district court held a hearing over videoconference to announce its *ore tenus* ruling as to the unsealing of the documents pertaining to Doe 171 and seven other non-parties, without permitting any additional argument. Indeed, it does not appear that Doe 171 was provided notice of the hearing, which they had only discovered by accident. Up until that point, Doe 171 had not been publicly identified by name, though the district court commenced its ruling by making that association on the record for the first time. Hr'g Tr.:5-6.

After associating Doe 171 with her real name, the district court made a number of observations that militate against unsealing the materials relating to Doe 171. For example, the district court acknowledged that the documents at issue "were submitted in connection with discovery motions" for which the "presumption of public access is somewhat less weighty than for a dispositive motion," trial testimony, or other similarly substantive matters. Hr'g.Tr.:3; *accord Brown*, 929 F.3d at 49-50 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (CA2 1995)) ("[D]ocuments that 'play only a negligible role in the performance of Article III

7

duties' are accorded only a low presumption of public access that 'amounts to little more than a predilection of public access absent a countervailing reason,'" as opposed to "evidence introduced at trial or in connection with summary judgment," which "enjoys a strong presumption of public access").

Moreover, the district court described its "general[] inclin[ation] to protect the identities of victims of sexual abuse, even in the face of a presumption of public access." *Id.* at 5-6. In fact, the district court held that the name of another non-party (i.e., Doe 28) "shall remain sealed" because she is a "victim of sexual assault who experience[s] trauma as a result of these events." Hr'g.Tr.:5-7. Regardless of whether the information contained in the documents are true (which Doe 171 disputes), and regardless of whether Doe 171 is properly characterized as a victim of sexual abuse ████████████████████████████████████████ ████████████████████████████████████████████ the privacy interest that Doe 171 maintains in avoiding the public disclosure of lurid fabrications about her ordeals dovetail with the district court's "general inclination" to protect sexual assault victims like Doe 28.

In addition, as the district court noted, "just because 'some information relating to the documents in question already has been discussed on the public record or reported in the media does not mean that the concerned third parties have lost any remaining privacy interests in their contents.'" *Id.*:5-6 (quoting *United States v.*

*Gatto*, 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019)); *accord Brown*, 929 F.3d at 51 (quoting *Nixon*, 435 U.S. at 598) ("[D]istrict courts may employ several methods" to ensure that their "'records and files . . . are not used to gratify private spite or promote public scandal' or 'serve as reservoirs of libelous statements for press consumption'").

Yet, despite those favorable findings and conclusions, the district court ultimately ordered all documents pertaining to Doe 171 to be unsealed without redactions, save for a single document comprising "notes of a teleconference" to which "the presumption of public access does not attach" because it "played no part" in any judicial determination. Hr'g.Tr.:17 (denying motion to unseal only as to Doc. 185-15).

According to the district court, Doe 171 purportedly lacked any cognizable privacy interest merely because references to Doe 171  had already been made in "[n]umerous public sources, *Id.*:5-6.

But the factual underpinning of the district court's unsealing order is clearly erroneous. Specifically, although Doe 171 does not deny that numerous public sources identify her ███████████████████████████████ that

9

innocuous fact is a far cry from the sexually explicit and false information that has never been divulged before, but which the district court's *ore tenus* unsealing order threatens to reveal for the first time on December 5, 2022. And, to make matters far worse, the sexually explicit information at issue is plainly untrue as it relates to Doe 171, but was purposely misattributed to Doe 171 in order to shield the individuals who had actually engaged in such activity from scrutiny.

Thus, not only does the district court's unsealing order threaten to reopen the trauma Doe 171 suffered based on her unwilling proximity to some of the events at issue, but it also subjects Doe 171 to public scorn, shame, and embarrassment based on intentional instances of mistaken identity which could cause real danger to Doe 171's safety. Contrary to the district court's plainly erroneous belief to the contrary, these false and salacious allegations were never publicly disclosed and there is no possibility that their illusory contribution to any legitimate public discourse could possibly outweigh Doe 171's right to be left alone as an innocent non-party, ███████████████████████████████████████████████████ ████████████████████████████████████████████

Due to time constraints imposed by the district court's unsealing order and other considerations, Doe 171 is obligated to file this motion for an extension of time as a public record in an abundance of caution to avoid the inadvertent waiver of any of Doe 171's ███████████ rights in the event that this Court were to reject a

10

sealed filing or strike any redactions. Thus, Doe 171 is necessarily restricted in her ability to describe the material at issue, but the entirety of the record and the notorious subject matter of the proceedings below reflect its unquestionably prurient nature. Until it is feasible to provide a more comprehensive description and explanation of the offending material at issue, Doe 171 encourages the Members of this Court that are not faint of heart to examine the materials that are at risk of being disclosed under the district court's unsealing order, including particularly docket entry numbers 172 and 173-5, which would be self-evidently damaging to Doe 171 if unsealed while this appeal remains pending.

To put it simply, ███████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Doe 171 is a non-party to these proceedings who does not deserve to be victimized. But that is exactly what will occur if Doe 171 is unnecessarily and falsely associated with private sexual conduct that other individuals might have engaged in over 20 years ago, including without consent and under duress, and have been misattributed to Doe 171. At the very least, it is necessary and appropriate to extend the district court's stay pending the resolution of this appeal on the merits which not only implicates the most intimate of privacy rights but also raises substantial and complex questions relating to the balancing of

sensitive interests ████████████████████████████████████
████

## GROUNDS AND RELIEF SOUGHT

When an individual—particularly an innocent non-party—challenges a lower court order requiring the disclosure of private information, this Court and other reviewing courts routinely hold that a temporary stay is warranted to prevent a "cat-out-of-the-bag" disclosure that would moot the pending appeal. *See, e.g.*, *In the Matter of The New York Times Co.*, 834 F.2d 1152, 1154 (CA2 1987) (reflecting entry of temporary stay pending appeal); *Ferguson v. F.B.I.*, 957 F.2d 1059, 1060 (CA2 1992) (same); *N. Jersey Media Group, Inc. v. United States*, 836 F.3d 421, 424 (CA3 2016) (same). Indeed, district courts in this Circuit and others often enter stays to persist for the pendency of the entire appeal without requiring the individuals whose information subject to disclosure to petition the reviewing court for any extension. *See, e.g.*, *Application of Newsday, Inc.*, 895 F.2d 74, 75 (CA2 1990) (reflecting district court's entry of stay pending appeal); *Olson v. Major League Baseball*, 29 F.4th 59, 66 (CA2 2022) (same); *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 397 (CA1 2005) (same). Those archetypal circumstances warranting the entry of a stay pending are presented in this case, which the district court implicitly recognized when it stayed its *ore tenus* unsealing order. Doc. 1275.

12

In issuing similar stays to prevent cat-out-of-the-bag disclosures, courts around the country apply the familiar standards "governing preliminary injunctions," which asks "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Under this analysis, the "first two factors"—namely, the likelihood of success on the merits and irreparable harm—"are the most critical." *Id.*; *accord, e.g.*, *New York v. U.S. Dept. of Homeland Security*, 974 F.3d 210, 214 (CA2 2020) (applying *Nken* and granting stay). The district court correctly concluded that it was appropriate to stay its *ore tenus* unsealing order pending appeal, and Doe 171 respectfully urges this Court not to disturb its conclusion until it has an opportunity to assess the merits of this appeal.

### A. The District Court's Stay Reflects a "Likelihood of Success" that Supports an Extension of the Stay Pending Appeal

Doe 171 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ has already seen her privacy rights decimated by the legal proceedings below in which she has been falsely associated with traumatic events that occurred in her vicinity without her willing participation. The district court's *ore tenus* unsealing order "raises difficult questions concerning [Doe 171's] claimed right of privacy" that potentially implicate Doe 171's due

13

process rights ████████████████████████████ for which "[s]ummary

treatment . . . would be inappropriate." *Doe v. McMillan*, 442 F.2d 879, 881 (D.D.C.

1971); *Providence Journal Co. v. F.B.I.*, 595 F.2d 889, 890 (CA1 1979) (granting

stay where "there are serious legal questions presented"). Under this Court's

precedents, Doe 171's appeal has a strong likelihood of succeeding on the merits.

In an earlier appeal involving these same parties, this Court cautioned lower

courts and the public about the dangers of allowing the sexually charged materials

on the district court's docket to be "weaponize[d]" in a manner that might

"exacerbate the[] harms to privacy and reputation" if such "damaging material

irrevocably enters the public record." *Brown v. Maxwell*, 929 F.3d 41, 47

(CA2 2019). Despite this Court's instruction to "notify[ ] any outside parties whose

privacy interests might be implicated by the unsealing," and to "exercise the[ ]

powerful tools" available to protect such important interests, *id.* at 47, 51, it appears

that those safeguards may have been compromised as to documents concerning

Doe 171. Although undersigned counsel was only retained to represent Doe 171

approximately one week ago, and its investigation remains ongoing, it appears that

Doe 171 was neither notified nor provided any opportunity to object before several

tranches of documents identifying Doe 171 by name were unsealed ███████████

████████

14

Then, as a result of Plaintiff's "mistake," Doe 171 was not notified of the unsealing issue that is the subject of this appeal until hours before the deadline for the parties to file their opening briefs. Doc. 1247:15 & n.11. Plaintiff's counsel only vaguely advised the district court that Doe 171's counsel had since been "inform[ed] of the mistake" and had been made "aware that Plaintiff is responding to their objections in this brief." *Id*. But Plaintiff never mentioned that those revelations had not occurred until earlier that same day.

And, rather than taking steps to accommodate the fact that Doe 171 had been deprived of notice until the day of the opening briefing deadline, Plaintiff capitalized on her own oversight in two ways: First, Plaintiff demeaned Doe 171's "single[-]paragraph objection" as insubstantial, even though Doe 171 was blindsided with this issue and deprived of the substantive information to evaluate her rights with only hours to spare before the parties' opening briefing deadline. Second, Plaintiff emphasized that the documents had already been "partially unsealed in prior round[s] of unsealing," which may have contributed to Doe 171's name having "already [appeared] in the public domain," even though Doe 171 was never given notice or an opportunity to object to those prior rounds of unsealing through no fault of her own. Doc.1247:15-16; Doc. 1247-1; *accord* Hr'g.Tr.:5 (district court remarking that the chart identified in Doc. 1247-1 was "very helpful[ ]").

Compounding these potential due process violations, the district court's decision to unseal salacious materials that implicate Doe 171's privacy interests was based entirely on a plainly erroneous finding of fact. Specifically, under the district court's analysis, it was not necessary to consider whether Doe 171 ████████████ ████████████████████████ had her privacy rights infringed based on information disclosed in "[n]umerous public sources" ████████████ ████████████████████ Hr'g.Tr.:6. Of course, it is not disputed that public sources identify Doe 171 ████████████████████████ but that misses the point. Doe 171 initiated this appeal because the district court's *ore tenus* unsealing order allows for the imminent release of extraordinarily sensitive and traumatic information that has never been publicly disclosed and would be revealed for the first time on December 5, 2022 in the absence of a stay. *See, e.g.*, *id.* (district court unsealing DE 172 and DE 173-5).

Moreover, as the district court acknowledged, "just because 'some information relating to the documents in question already has been discussed in the public record or reported in the media does not mean that the concerned third parties have lost any remaining privacy interests in their contents.'" *Id.*:4-5 (quoting *United States v. Gatto*, 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019). According to undersigned counsel's ongoing investigation, the documents subject to the district court's unsealing order contain information that has not been previously disclosed

and thus remain entitled to protection under settled law, even if other similar information had already been divulged in violation of Doe 171's due process and other rights to privacy. *See id*.; *Wiggins v. Natl'l Credit Union Admin.*, 2007 WL 2559941, at *8 (D.D.C. Jan. 30, 2007) ("Prior disclosure of personal information does not eliminate the privacy interest in avoiding further disclosure"); *Burke v. U.S. Dept. of Justice*, 1999 WL 1032814, at *4 (D.D.C. Sept. 30, 1999) ("The fact that" someone "might be able to figure out some or all of the individuals' identities through other means . . . does not diminish their privacy interests in not having the documents disclosed").

Finally, Doe 171's nuanced interests ████████████████ do not appear to have been adequately considered or addressed by the district court. At the outset, the district court erroneously characterized Doe 171's position ███████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ In fact, Doe 171's has intentionally elected to forego a substantial financial windfall while incurring untold hardship by steadfastly refusing to disclose any details about her ordeals ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

17

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████ the district court was not able to conduct an

appropriately sensitive inquiry that adequately considered Doe 171's uniquely

fraught position ████████████████████████████████

Under similar circumstances, district courts in this Circuit have undertaken

careful assessments of the interests ███████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████ Upon entry of a stay, Doe 171 and her recently retained

undersigned counsel intend to seek permission to supplement the record as

appropriate under seal to facilitate the district court's exercise of the "supervisory

function" that is "not only within [its] power, but also among its responsibilities" by

"issuing appropriate protective orders" among "several [other] methods" to flexibly

take into account the uniquely complex privacy interests presented by Doe 171's

status ████████████████████████████████

18

**B.** **The District Court's Stay Reflects a Risk of "Irreparable Harm" that Supports an Extension of the Stay Pending Appeal**

Despite making a strong showing on all prongs of the stay analysis, Doe 171 would "not necessarily have to make a strong showing with respect to the first factor (likelihood of success on the merits) if a strong showing is made as to the second factor (likelihood of irreparable harm)." *John Doe Co. v. Consumer Fin. Protection Bureau*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017); *accord Providence Journal*, 595 F.2d at 890 ("Where, as here, the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay"). "In addition to weighing the likelihood that the irreparable injury will occur, the Court must consider the significance of the change from the status quo which would arise in the absence of a stay." *John Doe*, 235 F. Supp. 3d at 205 (cleaned up).

Doe 171 will suffer "irreparable harm because disclosure of the documents in question will render any appeal moot" by reversing the status quo to reveal fabrications of an intimate nature that will expose Doe 171 to public scorn, trauma, and danger. *Center for Int'l Env'l Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003); *accord John Doe Co.*, 225 F. Supp. 3d at 205 ("[T]he second factor weighs heavily in favor" of granting a stay pending appeal, without which "the [appellee] would no longer have had any legal obligation to

refrain from publicly disclosing [the appellant's] identity or . . . related documents," after which no court "could un-ring the bell, and significant portions of [the appellant's] sought-after remedy would become moot").

In short, regardless of whether the information contained in the documents subject to disclosure were true (which it is not), it is difficult to conjure a rational argument that its unauthorized disclosure would not present a risk of irreparable harm. Courts should not "condone, much less affirmatively aid[,] the large scale republication" of "irrelevant matter" that "would result in widespread dissemination of scurrilous and libelous statements about persons who [a]re not parties" to the litigation. *United States v. Criden*, 648 F.2d 814, 832 (CA3 1981) (Weis, J., concurring in part); *accord Brown*, 929 F.3d at 44 ("[W]e recognize the potential damage to privacy and reputation that may accompany public disclosure of hard-fought, sensitive litigation"). And, as this Court expressly observed, the harm that Doe 171 would suffer in the wake of such disclosures could not be remedied by money damages because they would likely be "[s]hielded by the 'litigation privilege'" that removes any "fear of lawsuit and liability" based on the lies that are at risk of being unsealed by virtue of the district court's *ore tenus* order in the absence of a stay. *Brown*, 929 F.3d at 47 ("[A]ccess to court documents has the potential to exacerbate these harms to privacy and reputation" that occur when "damaging material irrevocably enters the public record").

**C.**     **The District Court's Stay Reflects that All "Remaining Interests" that Supports an Extension of the Stay Pending Appeal**

The remaining stay factors—including a weighing of the potential hardship to appellees and the public interests—largely overlap and fail to overcome the first two factors that strongly counsel in favor of entering a stay pending appeal. As the district court recognized, there may be a generic "public interest in monitoring federal courts' exercise of their Article III powers," but the documents that are the subject of this appeal consist of tangentially relevant papers for which the "presumption of public access is somewhat less weighty." Hr'g.Tr.:3; *accord Brown*, 929 F.3d at 49-50 (quoting *Amodeo*, 71 F.3d at 1050) ("[D]ocuments that 'play only a negligible role in the performance of Article III duties' are accorded only a low presumption that 'amounts to little more than a prediction of public access absent a countervailing reason'").

To the extent that any of the parties to the proceedings below or the public has any genuine interest in unsealing additional private information about Doe 171 that has not already been disclosed, it is impossible to argue that anyone has an **immediate** need for that information. And that is the only question that is relevant to this narrowly tailored motion for a stay pending appeal. After all, the information in question relates to lurid incidents that occurred over 20 years ago, and no one will be harmed by the entry of a stay necessary to permit this Court to undertake a

21

deliberate consideration of these sensitive and important issues to avoid traumatizing an innocent non-party by dredging up lurid events that occurred decades ago.

## CONCLUSION

For the foregoing reasons, Doe 171 respectfully requests that this Court extend the district court's order staying its *ore tenus* unsealing order pending the resolution of this appeal.

Dated: December 2, 2022

Respectfully submitted,

By: */s/ Jeffrey Gutchess*
Jeffrey W. Gutchess, Esq.
**AXS LAW GROUP, PLLC**
2121 NW 2nd Ave, Suite 201
Miami, Florida 33127
Telephone: (305) 297-1878
Florida Bar No. 702641
jeff@axslawgroup.com
eservice@axslawgroup.com

*Counsel for Doe 171*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, a true and correct copy of the foregoing document was served and filed via the Court's CM/ECF system on all counsel of record.

/s/ *Jeffrey Gutchess*

Jeffrey W. Gutchess

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to FRAP 27 and 32 and Local Rule 27.1 and 32.1, the foregoing motion was prepared on a computer using Microsoft Word. The proportionally spaced typeface, font size, and spacing used are as follows:

Name of typeface: Times New Roman

Pont Size: 14

Line Spacing: Double

The total number of words in the motion, based upon the Microsoft Word software count, exclusive of the cover and signature, is 5,038 words.

Dated: December 2, 2022

/s/ *Jeffrey W. Gutchess*
Jeffrey W. Gutchess, Esq.

23