# 22-3042

## United States Court of Appeals
## for the Second Circuit

VIRGINIA L. GIUFFRE,

*Plaintiff-Appellee,*

v.

GHISLAINE MAXWELL,

*Defendant,*

v.

JOHN DOE 107,

*Objector-Appellant,*

v.

JOHN DOE 171.

*Objector-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
15-CV-7433 (LAP)

---

## Virginia Giuffre's Response in Opposition to
## John Doe 171's Emergency Motion to Stay

---

Sigrid S. McCawley
Boies Schiller Flexner LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011

*Attorney for Plaintiff-Appellee Virginia L. Giuffre*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................1

STATEMENT OF THE CASE AND THE FACTS...................................................4

ARGUMENT ....................................................................................9

I.     LEGAL STANDARD ON MOTION TO STAY............................................9

II.    TAYLER'S EMERGENCY MOTION TO STAY IS MERITLESS AND
SHOULD BE DENIED. ..................................................................9

     A.     Tayler's Appeal Is Frivolous and Cannot Succeed on the Merits. .......9

     B.     Tayler Will Not Suffer Irreparable Injury Absent a Stay...................14

     C.     The Balance of Equities Do Not Favor A Stay Pending Appeal. .......16

     D.     The Public Interest Does Not Favor a Stay.......................................17

CONCLUSION .................................................................................18

CERTIFICATE OF COMPLIANCE.......................................................20

CERTIFICATE OF SERVICE .............................................................21

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

## <u>Cases</u>

*Bernstein v. O'Reilly*,
   307 F. Supp. 3d 161 (S.D.N.Y. 2018) ...................................................................12

*Brown v. Maxwell*,
   929 F.3d 41 (2d Cir. 2019) ........................................................... passim

*Centerfor Int'l Env'l Law v. Officeof U.S. Trade Representative*,
   240 F. Supp. 2d 21 (D.D.C. 2003) ................................................. 14, 15

*Giuffre v. Maxwell*,
   827 F. App'x 144 (2d Cir. 2020) ....................................................6, 17

*In re Parmalat Sec. Litig.*,
   258 F.R.D. 236 (S.D.N.Y. 2009) ......................................................12

*John Doe Co. v. Consumer Fin. Prot. Bureau*,
   235 F. Supp. 3d 194 (D.D.C. 2017).....................................................15

*Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*,
   880 F.3d 620 (2d Cir. 2018) ............................................................10

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ............................................................17

*Lytle v. JPMorgan Chase*,
   810 F. Supp. 2d 616 (S.D.N.Y. 2011) .............................................4, 11

*Nken v. Holder*,
   556 U.S. 418 (2009)....................................................................9, 14

*Paulsen v. County of Nassau*,
   925 F.2d 65 (2d Cir.1991) .............................................................17

*Thapa v. Gonzales*,
   460 F.3d 323 (2d Cir. 2006) .............................................................9

*United States v. Avenatti*,
  No. (S1) 19 CR. 373 (PGG), 2020 WL 70952 (S.D.N.Y. Jan. 6, 2020) .........4, 11

*United States v. Massino*,
  356 F. Supp. 2d 227 (E.D.N.Y. 2005) ..................................................................18

## **INTRODUCTION**

Doe 171 is Emmy Tayler.  *See* Dkt. 1284 (Nov. 18, 2022, Hr'g. Tr.) at 5; DE

22-2 (same).[1]  Despite proceeding as "John Doe 171," Tayler's name and association

with Jeffrey Epstein and Ghislaine Maxwell permeate the public domain.[2]  Indeed,

in overruling Tayler's objections to unsealing documents referencing her, the

District Court found as follows:

> [O]n July 19, 2022, Ms. Tayler filed a federal lawsuit against Julie
> Brown, the reporter, and Harper Collins alleging that Ms. Brown's
> book, Perversion of Justice, contains allegedly defamatory statements
> about Ms. Tayler and her alleged association with Jeffrey Epstein.  In
> her complaint Ms. Tayler republishes certain allegedly defamatory
> statements made in the book, and she states that "from 1997 to 2001,
> she was employed in London and then New York as an assistant to
> Ghislaine Maxwell."  Numerous other public sources, including
> unsealed portions of Ms. Maxwell's criminal trial transcript, similarly
> refer to Ms. Tayler.  Accordingly, this document will be unsealed.

---

[1] Citations to "DE" refer to this Court's docket at 22-3042 (the lead case of which Tayler's appeal (22-3050) is a member), and citations to "Dkt." refer to the District Court docket.

[2] *See*, *e.g.*, Daniel Bates, "Actress once branded Ghislaine Maxwell's 'slave' sues author who said she helped organize Jeffrey Epstein's 'massage schedule' that let pedophile sexually abuse young girls," *Daily Mail* (Jul. 21, 2022), https://www.dailymail.co.uk/news/article-11037867/Ghislaine-Maxwells-slave-sues-author-claimed-organized-Jeffrey-Epsteins-massages.html (last updated Jul. 22, 2022); Debbie White, "Emmy Tayler: Ghislaine Maxwell's former PA sues 'Perversion of Justice' author," *The Times* (Jul. 22, 2022) https://www.thetimes.co.uk/article/emmy-tayler-ghislaine-maxwell-s-former-pa-sues-perversion-of-justice-author-x5hxj8xmc; Kate Briquelet, "Ghislaine Maxwell's Ex-Assistant Creepily Gushes About 'Generous' Jeffrey Epstein," *Daily Beast* (Dec. 16, 2021), https://www.thedailybeast.com/ghislaine-maxwells-ex-assistant-creepily-gushes-about-generous-jeffrey-epstein (last updated Aug. 1, 2022); Lia Eustachewich, "Emmy Tayler, former personal assistant to Ghislaine Maxwell, leaves UK," *New York Post* (Aug. 10, 2020), https://nypost.com/2020/08/10/emmy-tayler-maxwells-ex-personal-assistant-flees-uk-report/.

Dkt. 1284 at 6. As referenced by the District Court, the federal lawsuit Tayler filed, *Emmy Tayler v. Julie K. Brown*, *et al.*, 22-cv-61350-RS (S.D. Fla.), contains numerous references to Tayler's association with Epstein and Maxwell which are now in the public domain, including excerpts from another publicly available source, the *Perversion of Justice* book:

> Shortly thereafter, a silver-haired man with a long face and bushy eyebrows entered the kitchen, along with a young woman who appeared to be about Haley's age. His name was Jeffrey. The young woman's name, police would later learn, was Emmy Tayler. At the time, Tayler arranged Epstein's massage schedule and also worked as Maxwell's assistant. After the introductions, Tayler led Jane Doe 1 up a spiral staircase from the kitchen to a master bedroom and bath. Jane told police she became anxious as Tayler put up a folding massage table and laid out a bunch of oils. "Jeff will be up in a minute", she told Jane. There has been nothing to suggest that Tayler was aware of what happened in the room nor that she participated in any sexual activity.

*Tayler*, Dkt. 1 (Compl.) ¶ 10 (quoting Julie K. Brown, *Perversion of Justice: The Jeffrey Epstein Story*). And if that weren't enough, this Court *has already unsealed materials referencing Tayler from the summary judgment record* in 2019, which includes deposition excerpts revealing her involvement in the controversy. *See Brown v. Maxwell*, 18-2868 (2d Cir.), DE 283 (Unsealed Summary Judgment Record, App'x 9 of 13) at 327–29 (Sjoberg Dep. Tr. at 13:17–14:3; 15:1–2).[3]

---

[3] In her motion, Tayler asserts that "Doe 171 was neither provided any notice nor any opportunity to object before the district court unsealed several tranches of documents that identified her by name." DE 33 (Tayler Mot. to Stay) at 4–5. This assertion is demonstrably false and appears to be based on her counsel's failure to appreciate that this Court had already unsealed materials concerning her in 2019 and that the District Court would not seal materials that have already been published.

Yet despite Tayler's obvious public-figure status, she now asks this Court to shield from public access documents referencing her involvement with Epstein and Maxwell. That request should be denied.

For three years, the District Court and the parties have diligently conducted a document-by-document review of the sealed material, permitting parties and non-parties alike, including Tayler, to submit objections as to any material mentioning or involving them. In response to the District Court's instructions, on December 10, 2020, Tayler submitted a handwritten, one-paragraph objection premised on a generalized aversion to media attention. Tayler failed to provide any other argument for sealing. Later, on April 7, 2022, after receiving Ms. Giuffre's response to her objection, among others, Tayler submitted an *ex parte* reply submission (which to date Ms. Giuffre has never seen). On November 18, 2022, after inviting Tayler's counsel to the virtual hearing, the District Court ordered the certain limited materials unsealed, including 30 documents mentioning Tayler.[4]

The District Court did not abuse its discretion in ordering the Tayler materials to be unsealed, and Tayler's motion for a stay should be summarily denied. As mentioned above, Tayler has been a part of the public sphere at length, from countless news articles accessible on the first page of a Google search, to numerous

---

[4] Dkt. 144-6, 150-1, 153-1, 172, 173-5, 173-6, 185-3, 185-15, 203, 211, 224, 228, 235-4, 235-13, 249-4, 249-13, 272-5, 280-1, 320, 321-1, 321-6, 339, 340-3, 363-7, 369-1, 369-5, 407-4, 407-9, 423-4, and 450-1.

references at Maxwell's criminal trial, to even a federal lawsuit which *she herself initiated*.  Tayler also ignores the fact that material related to her has already been unsealed as part of the summary judgment material at issue in *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) ("Accordingly, and to avoid any further delay, we order that the summary judgment documents (with minimal redactions) be unsealed upon issuance of our mandate.").  These facts strongly militate against keeping documents related to Tayler sealed.  *See, e.g.*, *United States v. Avenatti*, No. (S1) 19 CR. 373 (PGG), 2020 WL 70952, at *6 (S.D.N.Y. Jan. 6, 2020) ("In considering whether sealing is appropriate, an important consideration is, of course, whether the information sought to be kept confidential is already public."); *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 626 (S.D.N.Y. 2011), 810 F. Supp. 2d at 626 ("While the conduct at issue may be potentially embarrassing to these employees . . . their names are already in the public record, and have been for several years.").

Because Tayler has no chance of succeeding on the merits of her appeal, and otherwise fails to satisfy the other factors necessary to obtain a stay, the Court should deny her motion to stay in its entirety.

## STATEMENT OF THE CASE AND THE FACTS

On September 21, 2015, Virginia Giuffre filed a complaint alleging that Ghislaine Maxwell defamed her by characterizing Ms. Giuffre's accusations of sexual assault and trafficking against Maxwell "obvious lies."  Dkt. 1 at ¶ 30.  Ms.

Giuffre sought to prove her defamation claim by proving that Maxwell's statements were false, that Maxwell did indeed sexually assault and traffic her, and that she made her false statements with actual malice. After a long period of discovery, consisting of voluminous motion practice, testimony, and documents, the parties settled the case just days before the four-week trial was scheduled. Much of the discovery record, however, remained under seal.

The Miami Herald eventually filed a motion to intervene in the matter and to unseal the district court docket pursuant to its efforts to provide the public with the full scope of Jeffrey Epstein's sex trafficking operation. The District Court denied the motion, but this Court reversed, unsealing the summary judgment record itself and remanding the matter to the District Court, which was tasked with "conduct[ing] an individualized review of the sealed materials" and "unseal[ing] all documents for which the presumption of public access outweighs any countervailing privacy interests." *Brown*, 929 F.3d at 51. In unsealing the summary judgment record, the Court commented that it had implemented its own redactions to protect personally identifying information, such as "personal phone numbers, contact lists, birth dates, and social security numbers." *Id.* at 48 n.22. As it pertains to Tayler, unsealed excerpts from the summary judgment record contained explicit references to Tayler and Epstein and Maxwell. *See Brown*, 18-2868, DE 283 at 327–29.

Upon remand, the District Court tasked the parties with developing an unsealing protocol, and eventually issued a protocol that involved noticing non-parties mentioned in sealed documents about the potential for unsealing, and providing those non-parties with an opportunity to object. Dkt. 1044. The initial non-party Does did not object to unsealing any document in which they are mentioned, but Maxwell objected to unsealing the first five motions at issue in any capacity.

On July 23, 2020, after full briefing by Maxwell, Ms. Giuffre, and the Miami Herald, the District Court ruled that the public has a right of public access to the first five motions and the documents filed in connection with those motions, and that under the standard that this Court set forth in *Brown v. Maxwell*, Maxwell had failed to provide specific, compelling reasons for keeping any of those documents permanently sealed. The District Court accordingly ordered that those documents be unsealed with limited redactions within one week. Maxwell appealed. *See Giuffre v. Maxwell*, No 20-2413 (2d. Cir.). On October 19, 2020, this Court summarily denied Maxwell's appeal as "without merit" and affirmed the District Court's July 23, 2020, unsealing order. *Giuffre v. Maxwell*, 827 F. App'x 144, 146 (2d Cir. 2020).

On remand, the District Court proceeded with its unsealing process related to Does 1 and 2 and eventually other non-party Does. It released numerous previously

sealed docket entries, some with redactions and others in their entirety.  *See*, *e.g.*, Dkt.  1137, 1198, 1199, 1200, 1201, 1202, 1212, 1218, 1219, 1256, 1257.

Notably, the District Court's unsealing orders held that the parties should unseal documents and information that were already publicly available predating the unsealing process. *See* Dkt. 1220 (Jul. 1, 2021, Hr'g. Tr.) at 7:1–8 (noting that "there is rarely a scenario when there is sufficient cause to continue sealing materials on the docket where those materials are already public").[5]

On February 16, 2022, the District Court ordered briefing on objections received by eight non-party Does, including Tayler.  Dkt. 1245.  On March 18, 2022, Ms. Giuffre filed her response in opposition to Tayler's objection, which had been submitted under seal.  Dkt. 1247.

Tayler suggests that she was somehow unable to object before the District Court ordered unsealed the relevant documents and that it was somehow Ms. Giuffre's fault.  *See* DE 33 at 6.  That is untrue.  *First*, only the parties to the action, *i.e.,* Ms. Giuffre and Maxwell, were provided the opportunity to submit opening briefs on March 18, 2022, in response to the objecting Does submissions.  Dkt. 1245. Tayler had already submitted her objection on December 10, 2020.  *Next*, Ms. Giuffre advised Tayler that she could submit a reply submission by April 8, 2022,

---

[5]  That material already made public by this Court would not be re-sealed was explained to Tayler's counsel, as they had previously inquired with the District Court and parties as to why some material concerning Tayler was not being sealed in previous rounds of unsealing.

which Tayler did in an *ex parte* submission. *Finally*, Tayler had actual or reasonable notice of the District Court's November 18, 2022, hearing. By this time, Tayler unambiguously knew her Doe number, as Ms. Giuffre told her on March 18, 2022. Tayler's monitoring of the docket would have shown her that, on November 3, 2022, the Court acknowledged receipt of briefing on the latest batch of objections and set a hearing for November 18, 2022, encouraging "interested parties . . . to appear telephonically for the Court's rulings as to these objections." Dkt. 1271; *see also*, Dkt. 1273. Lest there be any doubt, Tayler's counsel was included in the District Court's calendar invitation sent on November 16, 2022, for the upcoming November 18, 2022, hearing.

While the unsealing process was unfolding, Tayler separately filed, on July 19, 2022, a defamation lawsuit against Julie Brown and Harper Collins in the Southern District of Florida containing excerpts referencing her from Brown's book, *Perversion of Justice: The Jeffrey Epstein Story*. *Tayler*, 22-cv-61350-RS (S.D. Fla.), Dkt. 1. After the judge in that case entered an order to show cause as to why Tayler never perfected service on the defendants, *see id.* at Dkt. 5, Tayler voluntarily dismissed her lawsuit without prejudice on November 23, 2022. *Id.* at Dkt. 6. In her lawsuit against Julie Brown and Harper Collins, Tayler was represented by Jeffrey Gutchess of AXS Law Group, PLLC, the same US-based attorneys who represent her in these proceedings.

**ARGUMENT**

Tayler cannot meet her burden of making a strong showing that she is entitled to a stay pending appeal. Her motion should be denied.

## I. LEGAL STANDARD ON MOTION TO STAY.

To justify a stay pending an appeal, the proponent bears the burden of (1) making a "strong showing" that reversal on appeal is "likely," (2) showing that, absent a stay, they will suffer irreparable injury, (3) demonstrating that the equities favor them, and (4) showing that a stay would be in the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009). The degree to which a factor must be present varies with the strength of the others; "more of one [factor] excuses less of the other." *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006) (citation and quotation marks omitted). "The necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors," that is, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay." *Id.*

Tayler fails to meet her burden on all four fronts.

## II. TAYLER'S EMERGENCY MOTION TO STAY IS MERITLESS AND SHOULD BE DENIED.

### A. Tayler's Appeal Is Frivolous and Cannot Succeed on the Merits.

A movant seeking a stay pending appeal is required to make a "strong showing" that reversal on appeal is "likely." *Nken*, 556 U.S. at 426. The District

Court's ruling as to the Tayler materials is subject to an abuse of discretion standard and was a correct and careful application of remand instructions from this very Court. Tayler's challenges to the District Court's ruling are highly unlikely to succeed on appeal and are instead frivolous.

"When reviewing a district court's decision to seal a filing or maintain such a seal, '[the Second Circuit] examine[s] the court's factual findings for clear error, its legal determinations de novo, *and its ultimate decision to seal or unseal for abuse of discretion.*'" *Brown*, 929 F.3d at 47 (emphasis added). "A district court abuses its discretion if it (1) bases its decision on an error of law or uses the wrong legal standard; (2) bases its decision on a clearly erroneous factual finding; or (3) reaches a conclusion that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 627 (2d Cir. 2018) (internal quotation marks omitted). Accordingly, to succeed on appeal, Tayler must be able to demonstrate that the District Court's ruling that the public has a presumptive right of access to the documents at issue in the unsealing process was an abuse of discretion. Tayler will be unable to do so.

Tayler claims that her "her privacy rights [have been] decimated by the legal proceedings below," and that further unsealing of materials referencing her will continue to invade her privacy. But as explained above, there is little doubt that

10

Tayler's association with Epstein and Maxwell has been public knowledge for many years and from many sources. *See* Dkt. 1284 at 5–6. In other words, the District Court correctly based its decision on the fact that Tayler's name and association with Epstein and Maxwell are well-known in the public domain. Even Tayler acknowledged that her name and association is in the public sphere, as she must. That recognition counsels in favor of unsealing, as an "important consideration" of "whether the information sought to be kept confidential is already public." *See Avenatti*, 2020 WL 70952, at *6; *see also Lytle*, 810 F. Supp. 2d at 626.

Additional references to Tayler can easily be found on Google or in the public court system. Indeed, the federal lawsuit Tayler filed, *Emmy Tayler v. Julie K. Brown, et al.*, 22-cv-61350-RS (S.D. Fla.), contains numerous references to Tayler's association with Epstein and Maxwell which are now in the public domain, including excerpts from another publicly available source, the *Perversion of Justice* book. *Tayler*, Dkt. 1 (Compl.) ¶ 10 (alleging that the book "falsely stated that Plaintiff worked for and arranged Jeffrey Epstein's 'massage' schedule in 2005 when he was a prolific pedophile who regularly sexually abused underage girls").

Perhaps most fatal to Tayler's appeal is that this Court itself has already unsealed materials referencing Tayler from the summary judgment record in 2019. Deposition excerpts from the unsealed record include:

Q. And what happened that second time you came to the house?

11

A. At that point, I met Emmy Taylor, and she took me up to Jeffrey's bathroom and he was present. And her and I both massaged Jeffrey. She was showing me how to massage. And then she -- he took -- he got off the table, she got on the table. She took off her clothes, got on the table, and then he was showing me moves that he liked. And then I took my clothes off. They asked me to get on the table so I could feel it. Then they both massaged me.

(. . .)

Q. Who did Emmy work for?
A. Ghislaine.

*Brown*, 18-2868, DE 283 at 327–29.

Tayler's motion expresses little more than a generalized aversion to being associated with Epstein and Maxwell, as well as a fear that unsealing would unduly invade her privacy. Like other Does, Tayler contends that disclosure of this information will cause them ridicule and embarrassment. But Tayler does not cite any legal authority suggesting that these concerns outweigh the presumption of public access.

As has been discussed at length during this unsealing process, "[g]eneralized concerns of adverse publicity do not outweigh the presumption of public access." *Bernstein v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018) (internal quotation marks, alterations, and omitted); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("[B]road allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test."). Simply put, Tayler's aversion to being associated with Epstein and Maxwell, and the effects on Tayler's reputation,

12

is not a reason to maintain sealing, and does not rebut the presumption of public access.

Nor are mere denials of Tayler's role in any wrongdoing enough to outweigh the presumption of public access—if that were the case, then the Court could not have unsealed the voluminous deposition testimony and briefing accusing Ghislaine Maxwell of wrongdoing.

Finally, Tayler claims without citation to any relevant authority that the District Court's unsealing process violated her due process rights. She incorrectly suggests that she was somehow unable to object before the District Court ordered unsealed the relevant documents. But only the parties to the action were provided the opportunity to submit opening briefs on March 18, 2022, in response to the objecting Does submissions. Dkt. 1245. By that point in time, Tayler had *already submitted her objection* on December 10, 2020. Moreover, Ms. Giuffre advised Tayler that she could submit a reply submission by April 8, which she did. As for the unsealing hearing, Tayler had actual notice of the District Court's November 18, 2022, hearing. By this time, Tayler unambiguously knew her Doe number, as Ms. Giuffre told her on March 18, 2022. Tayler's monitoring of the docket would have shown her that, on November 3, 2022, the Court acknowledged receipt of briefing on the latest batch of objections and set a hearing for November 18, 2022, encouraging "interested parties . . . to appear telephonically for the Court's rulings

13

as to these objections." Dkt. 1271; *see also* Dkt. 1273. And, Tayler's counsel was included in the District Court's invite sent on November 16, 2022. In sum, Tayler was given ample opportunity to object to unsealing and attend the hearing. Nothing more was required of the District Court, and its unsealing order should remain undisturbed.

### B. **Tayler Will Not Suffer Irreparable Injury Absent a Stay.**

Tayler's arguments as to irreparable harm are mostly repetitive of her arguments on success on the merits. But, as stated above, Tayler's status as a public figure associate with Epstein and Maxwell with specific allegations already public in lawsuits, transcripts, and news articles completely belies Tayler's claims that she will be subject to harm when the documents are unsealed.

Tayler also asserts that denial of a stay will moot her appeal and thus irreparably harm her. But Tayler has not cited a single Second Circuit case stating that the possibility that an appeal will become moot in the absence of a stay constitutes irreparable injury under the *Nken* standard. The out-of-circuit, district-court cases Tayler does cite are readily distinguishable. For example, in *Center for Int'l Env'l Law v. Office of U.S. Trade Representative*, the fact that the district court's decision centered on a "novel and admittedly difficult legal question" weighed in favor of a stay. 240 F. Supp. 2d 21, 22 (D.D.C. 2003) (case brought under Freedom of Information Act (FOIA) against Office of United States Trade

Representative seeking information related to negotiation of United States-Chile Free Trade Agreement).  No such difficult legal questions were before the District Court here.  The release of documents was also examined in light of a FOIA request, which does not exist here.  Finally, the procedural posture is completely different— there, even though the district court granted a stay, it only did so for two weeks and only if the party filed a notice of appeal.  Here, Tayler already received its stay at the District Court and now wants one for the entirety of its appeal from this Court.

Tayler's citation to *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194 (D.D.C. 2017) fares no better.  In that case, a company sought to enjoin the Consumer Financial Protection Bureau from investigating it.  In denying the plaintiff's motion for temporary restraining order and preliminary injunction, the district court found that "Plaintiff has shown neither a substantial likelihood of success on the merits nor a likelihood that it will suffer irreparable harm absent the issuance of a preliminary injunction." *Id.* at 205.  With respect to the plaintiff's stay request, as with *Center for Int'l Env'l Law*, the district court only granted a stay so that the plaintiff could appeal its ruling to the circuit court.  *See id.* at 206 ("a narrow injunction preserving John Doe Co.'s ability to petition the D.C. Circuit for a stay is warranted").  And, as with *Center for Int'l Env'l Law*, that case involved complex and novel legal issues involving the constitutionality of the Consumer Financial Protection Bureau as a whole.  No such complex legal issues were before the District

15

Court here, and, indeed, the legal questions at issue here are relatively straightforward.

In short, Tayler cannot demonstrate irreparable injury justifying a stay pending appeal. In fact, because the documents at issue contain substantively nothing different than the allegations already existing in the public domain from lawsuits, news articles, and the already-released summary-judgment documents, no harm will befall Tayler whatsoever upon their unsealing. This factor also weighs against denial of Tayler's stay motion.

### C.    The Balance of Equities Do Not Favor A Stay Pending Appeal.

The third factor as to balance of equities weighs against a stay too. Tayler's concerns about her reputation are not exclusive to her. As this Court is well aware, this lawsuit was initiated when Maxwell attacked Ms. Giuffre's credibility and reputation, stating that Ms. Giuffre's accusations against Maxwell, who recruited her into a global sex-trafficking operation and sexually abused her for years, were "obvious lies." Since coming forward nearly a decade ago, Ms. Giuffre has been publicly attacked and called a liar by her abusers, who include some of the world's most powerful people, causing her to relive her trauma over and over again. These repeated instances of defamation have not only caused Ms. Giuffre serious pain but have likely convinced countless other victims to keep quiet.

Accordingly, this factor weighs against granting a stay as well.

**D.**     <u>The Public Interest Does Not Favor a Stay.</u>

The public interest unequivocally weighs against a stay of the District Court's order that the documents at issue here are entitled to a presumption of public access. Tayler attempts to argue that these documents are entitled to a "less weighty" presumption and implies that they played only a "negligible role" in the performance to the District Court's Article III duties. DE 33 at 21. To the extent Tayler is arguing that the materials concerning her are not judicial documents, that argument has long been waived. To be sure, they are, and as this Court has held time after time again, in this case alone, "[m]aterials submitted in connection with, and relevant to, discovery motions, motions *in limine*, and other non-dispositive motions are subject to a lesser—*but still substantial*—presumption of public access." *Brown*, 929 F.3d 41, 53 (2d Cir. 2019) (emphasis added); *see also Maxwell*, 827 F. App'x at 145.

As the Court has made clear, "[o]ur public access cases and those in other circuits emphasize the importance of *immediate access* where a right to access is found." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (emphasis added); *see also id.* ("We take this opportunity to emphasize that the district court must make its findings quickly."). "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991). This entire unsealing process is meant to ensure that the documents to which the public has a

right to access are expeditiously released. A stay pending appeal would directly contradict the objectives of this process and the public's constitutional right to immediately access the documents at issue.

This case is of great public interest, and rightfully so. The litigation involved voluminous documents and testimony about Jeffrey Epstein's transcontinental sex-trafficking operation and documents concerning various public agencies' utter failure to protect and bring justice to his victims for nearly two decades. *See United States v. Massino*, 356 F. Supp. 2d 227, 235 (E.D.N.Y. 2005) (recognizing that law enforcement's efforts "to stamp out organized crime in this District" were "a matter of vital public concern" and that the public had "a legitimate interest in being able to review materials that helped to ensure that the reputed boss of a notorious organized crime family will spend the rest of his natural life in a federal prison"). The public has a right to understand how and why the government failed Epstein's victims, and the lengths to which he and his co-conspirators went to discredit and silence their victims, including Ms. Giuffre.

## **CONCLUSION**

For the foregoing reasons, Tayler's emergency motion to stay pending appeal should be denied.

Dated: December 5, 2022        Respectfully submitted,

                        By: */s/ Sigrid S. McCawley*
                           Sigrid S. McCawley

401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

*Attorney for Plaintiff-Appellee*
*Virginia L. Giuffre*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 4,540 words, fewer than 5,200 words.  This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

By: */s/ Sigrid S. McCawley*
Sigrid S. McCawley

20

## **CERTIFICATE OF SERVICE**

I certify that on December 5, 2022, I served a copy of this Response in Opposition to John Doe 171's Emergency Motion to Stay to Stay via CM/ECF, which will send notification of the filing to all counsel of record.

By: */s/ Sigrid S. McCawley*
Sigrid S. McCawley