# 22-3042-cv(L), 22-3050-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———————◆———————

VIRGINIA L. GIUFFRE,

*Plaintiff-Appellee,*

– v. –

SHARON CHURCHER, JEFFREY EPSTEIN,

*Respondents,*

– v. –

GHISLAINE MAXWELL,

*Defendant,*

– v. –

JOHN DOE 107, JOHN DOE 171,

*Objectors-Appellants,*

– v. –

JULIE BROWN, MIAMI HERALD MEDIA COMPANY,

*Intervenors-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REDACTED BRIEF FOR
## OBJECTOR-APPELLANT JOHN DOE 171

JEFFREY W. GUTCHESS
AXS LAW GROUP PLLC
*Attorneys for Objector-Appellant
  John Doe 171*
2121 NW 2nd Avenue, Suite 201
Miami, Florida 33127
(305) 297-1878

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

APPELLANT'S INITIAL BRIEF ..................................................................... 1

JURISDICTIONAL STATEMENT .................................................................. 2

STATEMENT OF THE ISSUES ..................................................................... 3

STATEMENT OF THE CASE AND FACTS ................................................... 5

    A.    Nonparty Doe 171 Exercises Her Legal Rights to Preserve Her Anonymity and Integrity as a Victim of Sexual Abuse for Approximately 20 Years ...................................................... 5

    B.    Nonparty Doe 171 Is Not Provided Any Notice or Opportunity to Object Before the Unsealing of the Summary Judgment Record in 2019 Identified Her by Name as Ms. Maxwell's Former Employee .............................................. 8

    C.    Nonparty Doe 171 Is Victimized by an Effort to Disclose Additional False and Defamatory Materials Following the Unsealing of the Summary Judgment Record ...................... 9

    D.    Nonparty Doe 171 Is Deprived of Any of the Powerful Tools Ordinarily Employed by the District Court to Protect Similarly Situated Victims of Sexual Assault Merely Because She Had Been Identified as Ms. Maxwell's Former Employee .......... 13

SUMMARY OF THE ARGUMENT .................................................................. 14

ARGUMENT ................................................................................................... 18

    A.    The District Court's *Ore Tenus* Order Was Based on an Erroneous Finding that Prior Disclosures Justified Additional Harmful Disclosures .......................................................... 20

    B.    The District Court's *Ore Tenus* Order Was Based on an Erroneous Finding that the Redacted Material Was Important to the Public's Assessment of a Judicial Decision .............. 23

i

C.   The District Court's *Ore Tenus* Order Did Not Include a "Particularized" or "Individualized" Review that Balanced the Public Interest and Countervailing Private Interests Pertaining to the Disclosure of the Redacted Materials ...................... 25

D.   The District Court Erred by Failing to Consider International Comity ................................................................................................ 30

CONCLUSION ...................................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019)....................................................................*passim*

*Burke v. U.S. Dept. of Justice*,
    1999 WL 1032814 (D.D.C. Sept. 30, 1999) ..................................22

*Doe v. Lerner*,
    688 F. App'x 49 (2d Cir. 2017).......................................................2

*Doe v. N.Y. City Housing Auth.*,
    22 WL 2072570 (S.D.N.Y. June 9, 2022)...................................26

*Fossil Group, Inc. v. Angel Seller LLC*,
    2022 WL 9447259 (E.D.N.Y. Oct. 14, 2022) ..............................28

*Giuffre v. Maxwell*,
    2020 WL 133570 (S.D.N.Y. Jan. 13, 2020).................................24

*Gucci Am. Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014) .........................................................30

*In re Application of Newsday, Inc.*,
    895 F.2d 74 (2d Cir. 1990)...........................................................19

*In re Caswell*,
    18 R.I. 835, 29 A. 259 (1893) .....................................................26

*In re Maxwell Commc'n Corp. plc by Homan*,
    93 F.3d 1036 (2d Cir. 1996).........................................................32

*In re New York Times*,
    799 F. App'x 62 (2d Cir. 2020)............................................20, 30

*In re Terrorist Attacks on Sept. 11,*
    *2001*, 2019 WL 3296959 (S.D.N.Y. July 22, 2019) ...................31

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005).........................................................30

*N. Jersey Media Group Inc. v. United States*,
    836 F.3d 421 (3d Cir. 2016)............................................7, 24, 25

*Nixon v. Warner Communications, Inc.*,
    435 U.S. 589, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) ......................... 26-27

*Olson v. Major League Baseball*,
    29 F.4th 59 (2d Cir. 2022)...............................................................17, 19, 27

*Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
    2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017) ...............................................31

*S.E.C. v. TheStreet.com*,
    273 F.3d 222 (2d Cir. 2001).......................................................................2, 3

*Societe Nationale Industrielle Aerospatiale v.*
    *U.S. Dist. Ct. for the S. Dist. Of Iowa*,
    482 U.S. 522 (1987) .................................................................................30

*Stevenson v. News Syndicate Co.*,
    276 A.D. 614, 96 N.Y.S.2d 751, *aff'd*, 302 N.Y. 81, 96 N.E.2d 187
    (2d Dep't 1950) ......................................................................................27

*Strauss v. Credit Lyonnais, S.A.*,
    2011 WL 4736359 (E.D.N.Y. Oct. 6, 2011) ................................................31

*United States v. Amodeo*,
    44 F.3d 141 (2d Cir. 1995)........................................................................24

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995)................................................................*passim*

*United States v. Belfort*,
    2014 WL 2612508 (E.D.N.Y. June 11, 2014) .............................................26

*United States v. Cojab*,
    996 F.2d 1404 (2d Cir. 1993).......................................................................2

*United States v. Gatto*,
    2019 WL 4194569 (S.D.N.Y. Sept. 3, 2019) ...................................13, 15, 21

*United States v. Silver*,
    2016 WL 1572993 (S.D.N.Y. Apr. 14, 2016)..............................................22

*Wiggins v. Natl'l Credit Union Admin.*,
    2007 WL 2559941 (D.D.C. Jan. 30, 2007) .............................................16, 22

*Yukos Capital S.A.R.L. v. Samaraneftegaz*,
    592 F. App'x 28 (2d Cir. 2015)..............................................................32, 33

iv

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1332 ................................................................................2

Contempt of Court Act 1980 ...........................................................33

Local Rule 34.1(a) ............................................................................34

Mark Hodge, THE SUN, *Jeffrey Epstein prosecutors want to quiz Brit actress, 44, as a witness over claims she was part of paedo's "inner circle" while working as Ghislaine Maxwell's PA* ...........................8

N.Y. Civ. Rights Law § 50-b ..............................................................6

Sexual Offences (Amendment) Act § 1 (1992) .............................7, 32

Sexual Offences (Amendment) Act § 5 (1992) ...............................33

## APPELLANT'S INITIAL BRIEF

This is an appeal of an *ore tenus* order unsealing narrow redactions from insignificant pretrial filings which will cause fabricated sexually charged innuendo to be misattributed to an identifiable foreign nonparty. The district court held that Doe 171 is not eligible to benefit from any of the tools that courts typically exercise to protect nonparty ███████████████████████████████████████ ██████████████████████ merely because other unsealed filings had already disclosed that Doe 171 "was employed [by] Ghislaine Maxwell." A-0217–18. But the district court was misguided in finding an apples-to-apples equivalence between disclosing the name of a nonparty's former employer and releasing a trove of unvetted and hearsay statements falsely implying that the nonparty █████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████

The district court's failure to recognize the world of difference between those two disparate types of disclosures constitutes an abuse of discretion, which was amplified by other oversights and errors, including its failure to conduct the requisite "particularized review" of the public and private interests at stake or to analyze the comity interests to be afforded to the laws of ██████████████ where Doe 171 is a citizen and resident. Accordingly, Doe 171 respectfully requests that this Court

1

vacate the District Court's *ore tenus* order unsealing the limited redactions necessary to preserve her privacy and integrity and, if necessary, remand for further proceedings.

## JURISDICTIONAL STATEMENT

Appellant Doe 171 is a nonparty to the proceedings below, which was initiated by a complaint alleging that the claims established the district court's subject matter jurisdiction based upon the diversity of the parties under 28 U.S.C. § 1332. Dkt. 2 at 2, ¶ 4. Specifically, the complaint alleged that Plaintiff Virginia "Giuffre and [Defendant Ghislaine] Maxwell are citizens of different states and the among in controversy exceeds seventy-five thousand [dollars] ($75,000), exclusive of interest and costs." *Id*.

The district court's *ore tenus* unsealing order qualifies as "an exception to finality under the collateral-order doctrine," which establishes this Court's jurisdiction under 28 U.S.C. § 1291. *Doe v. Lerner*, 688 F. App'x 49, 50 (2d Cir. 2017); *accord United States v. Cojab*, 996 F.2d 1404, 1406 (2d Cir. 1993). First, the district court's order "'conclusively determined' the question of whether or not" the redacted materials at issue "would be disclosed." *S.E.C. v. TheStreet.com*, 273 F.3d 222, 228 (2d Cir. 2001). Second, "the issue of disclosure" of redacted materials necessary to preserve the identity of a nonparty "was wholly separate from the underlying merits of the action," and was entered after the entry of the final judgment

2

resolving the underlying litigation. *Id*. Third, "the alleged harm caused by the disclosure" of the redacted material to a nonparty "will be immediate and irreparable," particularly given that the entry of final judgment prior to the entry of the unsealing order renders the unsealing order "unreviewable on appeal from a final judgment." *Id*.

This appeal is timely. On November 18, 2022, the district court issued its *ore tenus* unsealing order that is the subject of this appeal. A-0212. On November 19 and December 1, 2022, the district court granted Doe 171's requests for "a stay of the release of documents relating to her" until "the Court of Appeals rules on Doe 171's request for a stay," provided that Doe 171 requested a stay from the Court of Appeals by December 2, 2022. Dkt.1275 & 1281. On December 1 and 2, 2022, Doe 171 filed a notice of appeal and requested an emergency extension of the district court's stay of the release of unsealed documents pertaining to her pending the resolution of this appeal. USCA Dkt. 1 & 17 . On December 8, 2022, this Court granted Doe 171's request for an extension of the district court's stay pending appeal. USCA Dkt. 34. Finally, this brief is timely filed on this date in accordance with this Court's deadline for filing the initial brief. USCA Dkt. 57.

## STATEMENT OF THE ISSUES

In an *ore tenus* unsealing order issued during a videoconference at which no oral argument was permitted, the district court removed the redactions necessary to

3

prevent Nonparty Doe 171 from being falsely associated ███████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Accordingly, Doe 171 raises the following issues in this appeal:

1.     Whether the district court erred by unsealing discovery motions and similarly insignificant pretrial submissions which identified a foreign nonparty by

████████████████████████████████████████████████████████

████████████████████████████ an merely because other materials pertaining to the foreign nonparty were previously unsealed in the summary judgment record without providing the foreign nonparty any notice or opportunity to object?

2.     Whether the district court erred by unsealing discovery motions and similarly insignificant pretrial submissions that identified a foreign nonparty by

████████████████████████████████████████████████████████

████████████████████████████ despite the fact that those materials had a nonexistent or negligible impact on the public's ability to monitor the federal judiciary?

3.     Whether the district court erred by failing to conduct a "particularized" or "individualized" review to determine whether there was a legitimate public interest that outweighed the countervailing interests of a foreign nonparty seeking to

4

preserve the limited redactions necessary to prevent her from being identified by

████████████████████████████████████████████████████████████████████

████████████████████████████████████

4.       Whether the district court erred by refusing to consider or apply the doctrine of international comity in unsealing discovery motions and similarly insignificant pretrial submissions which could potentially jeopardize a foreign nonparty's right to lifetime press anonymity under the laws of her home country by repeatedly identifying her by ██████████████████████████████████████████

████████████████████████████████████████████████████?

## STATEMENT OF THE CASE AND FACTS

Nonparty Doe 171 respectfully appeals an *ore tenus* order entered by the Honorable Loretta A. Preska of the United States District Court for the Southern District of New York, which erroneously removes the narrow redactions necessary to ensure that a foreign nonparty is not gratuitously and ███████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

**A.**      **Nonparty Doe 171 Exercises Her Legal Rights to Preserve Her Anonymity and Integrity as a Victim of Sexual Abuse for Approximately 20 Years**

Nonparty Doe 171 is a native and current resident and citizen of ███████████

████████      CA-0167–74. Before Doe 171 completed her education, Defendant

5

Ghislaine Maxwell transported Doe 171 to the United States to work as her assistant. While Doe 171 believed that she was pursuing her childhood dream of living and working in New York, ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Indeed, Doe 171 initially found solace in the laws of the relevant jurisdictions—i.e., New York State (where the underlying acts occurred) and ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████

████████████████████████████████████████

█████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████



*See id.* These laws preclude Doe 171 from ████████████████████████████████, and the protections they afford to Doe 171 are potentially jeopardized by ongoing proceedings in the United States which perennially threaten to publicize repeated disclosures ████████

████████████████████████████████████[1]

---

[1] ████████████████████████████████████████
██████████████████████████████████████████
*See N. Jersey Media Group Inc. v. United States*, 836 F.3d 421, 435-36 (3d Cir. 2016) ("We agree with the government that it would be a sad irony if" an "'act taken to safeguard certain information from . . . public disclosure inadvertently triggered the public's right to access that information'").

**B.**   **Nonparty Doe 171 Is Not Provided Any Notice or Opportunity to Object Before the Unsealing of the Summary Judgment Record in 2019 Identified Her by Name as Ms. Maxwell's Former Employee**

For over 20 years, Doe 171 relied on the privacy protections she was afforded under the law in attempting to restore some semblance of a normal life while ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████ use, Doe 171 was blindsided when global news headlines blared that they could finally report that Doe 171 was ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████

The "court papers" which inspired those headlines comprised the materials that were included in the summary judgment record which this Court unsealed in July 2019 without providing Doe 171 any notice, any opportunity to object, or any ability to organize her affairs to prepare for such a life-altering disclosure. *See Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019); CA-0167-74.  Though Judge Pooler agreed "that most or all" of the summary judgment record "must be unsealed," in her view, the district court would have been "better suited to the task" of "identifying and making specific redactions" to "nearly 2000 pages of material" after

8

communicating "with the parties and any nonparties whose privacy interests might be affected by unsealing." *Id*. at 54 (Pooler, J., dissenting in part). Consistent with Judge Pooler's concerns, the unsealing of the summary judgment record deprived Doe 171 of any ability to choose how to process her trauma, determine whether to publicize it, or prepare herself for the psychological harm that accompanies the violent harassment, abuse, stalking, threats, and objectification that continue to haunt her to this day. CA-0167–74.

**C.**   **Nonparty Doe 171 Is Victimized by an Effort to Disclose Additional False and Defamatory Materials Following the Unsealing of the Summary Judgment Record**

Doe 171 hoped that the initial furor resulting from the unsealing of the summary judgment record would subside, but several other ordeals were destined to follow in its wake. For instance, after the unsealing of the summary judgment record identified Doe 171 by name, others were emboldened to target her for further harassment and abuse. In particular, Doe 171 has been forced to fend off recent attacks by various individuals and entities attempting to conflate her identity with that of another woman named Sarah Kellen, who is alleged to have been one of Epstein's co-conspirators.

As a result of that smear campaign, Doe 171 was recently required to file a lawsuit for defamation before the relevant statute of limitations expired in order to respond to obvious fabrications contained in a book published by HarperCollins.

9

Doe 171 was careful to avoid disclosing any new details about herself that had not already been disclosed against her will. Specifically, she went to great lengths to limit her 30-paragraph complaint so that it did little more than reproduce the defamatory passage from the book while making it clear that it was patently untrue in every material respect. A-0229.[2]

Yet, despite Doe 171's caution in drafting her complaint, Giuffre and the media intervenors urged the district court to rely on the information that had been released about Doe 171 to date—all of which was either superficial, defamatory, or both—as a reason to unseal every redaction on the district court's docket pertaining to Doe 171, no matter how unreliable, no matter how false, and no matter how harmful those disclosures would be. Ultimately, Guiffre and the media intervenors successfully convinced the district court to remove the redactions identifying Doe 171 by name from the following docket entries which contained the following illustrative defamatory disclosures about Doe 171 (as noted in standard typeface), or which unnecessarily injected Doe 171's name into the public sphere for no substantive purpose (as noted in italicized typeface):

---

[2] The book that is the subject of the defamation lawsuit clumsily attempts to misattribute Kellen's wrongful acts to Doe 171 by parroting easily disprovable lies. For example, the book contains a false account that Doe 171 supposedly led a minor victim into a massage room to be abused by Jeffrey Epstein in Palm Beach, Florida in 2005. But, as HarperCollins was later forced to admit, it is Kellen—not Doe 171—who is named in the relevant police reports, while Doe 171 was neither employed by Ms. Maxwell nor living in Palm Beach by 2005. A-0237.

| Appendix Citation | Illustrative Defamatory or Irrelevant Disclosure Pertaining to Doe 171 |
|---|---|
| CA-0001; CA-0005; CA-0044; CA-0115; CA-0132 | Giuffre's counsel implying in confidential deposition questions that Doe 171 ████████████████████ |
| CA-0011 | Giuffre's counsel implying in confidential deposition questions that Doe 171 ████████████████████ |
| CA-0016 | Giuffre's counsel implying in an abandoned motion that Doe 171 ████████████████████ |
| CA-0021; CA-0142 | Witness conveying false hearsay story implying that Doe 171 ████████████████████ |
| CA-0064 | Counsel implying in a sealed motion that Doe 171 ████████ ████████████ |
| *CA-0068; CA-0070; CA-0072* | ████████████████████ *Doe 171* |
| CA-0074 | Counsel conveying hearsay article implying that Doe 171 ████████████████████ |
| CA-0076 | Giuffre testifying that ████████████████ ████████████ |
| *CA-0085* | *Doe 171's "Name misspelled"* |
| *CA-0087* | *Calendar entry reflecting proposed date for the deposition of Doe 171* |
| CA-0092; CA-0155 | Confidential initial disclosures speculating that Doe 171 has ████████████████████ |

| CA-0096; CA-0103 | *Request for production of documents concerning Doe 171* |
|---|---|
| CA-0099; CA-0106; CA-0110 | *Listing ESI search terms including the name of Doe 171* |
| CA-0112 | *Giuffre's counsel summarizing deposition testimony reflecting the witness's lack of knowledge about Doe 171* |
| CA-0118 | Giuffre testifying in a confidential deposition that Doe 171 ███████████████████████ by Epstein |
| CA-0149 | *Confidential deposition testimony lacking context or comprehensibility concerning Doe 171* |
| CA-0152 | Unidentified counsel implying in deposition questions that Doe 171 ██████████ |
| CA-0158 | Giuffre's counsel implying in confidential deposition questions that ███████████████████ |

Notably, some of the most lurid redacted materials were filed in support of a request for relief that Giuffre ultimately abandoned within approximately one month. *Compare* CA-0016, CA-0021, CA-0044 ██████████



██████ *with* CA-0068, CA-0070, & CA-0072 at CA-0073 n. 4 ████████████

████████████████████. And, all of the remaining redacted materials were only subject to limited redactions narrowly tailored to prevent Doe 171 from being identified by name in connection with unreliable, sexually charged fabrications without affecting the public's ability to monitor the substantive decision-making of the federal judiciary. *See, e.g.*, CA-0074, CA-0076, CA-0092.

**D.** **Nonparty Doe 171 Is Deprived of Any of the Powerful Tools Ordinarily Employed by the District Court to Protect Similarly Situated Victims of Sexual Assault Merely Because She Had Been Identified as Ms. Maxwell's Former Employee**

The district court's unsealing order was recited during a videoconference that the district court set solely to "announce its rulings on the unsealing of documents" associated with eight nonparties to the proceedings below, including Doe 171, without allowing any oral argument. A-0213:2-4. The district court's order was notable—and erroneous—in several respects:

First, the district recognized a ███████████████████████████ ████████████████████████████████████████████████ █████████████ though it only applied that principle as to other nonparties (e.g., Doe 28), but not as to Nonparty Doe 171. A-0217-18. The district court rationalized that discrepancy by publicly disclosing for the first time that Doe 171 was ████████, and observing in turn that "[n]umerous . . . public sources" had already "refer[red] to █████████████████████████████████████████.

Second, the district court itself suggested that such a leap in logic was unwarranted, acknowledging that, "just because 'some information . . . already has been discussed on the public record or reported in the media does not mean that the concerned third parties have lost any remaining privacy interests . . . .'" A-0216 (quoting *United States v. Gatto*, 2019 WL 4194569, at *8 (S.D.N.Y. Sept. 3, 2019)). But, once again, the district court only applied that principle as to other nonparties,

13

but not as to Doe 171, based on its finding that Doe 171 lacked any cognizable privacy interests concerning fabricated accounts of ███████████ merely because she had been identified as Ms. Maxwell's former employee. A-0217.

<u>Third</u>, Doe 171 is a foreign nonparty who had planned her life and arranged her affairs for the past 20 years in reliance on the stringent privacy protections that she had been afforded under the laws of the State of New York (where the relevant conduct occurred) and ███████████ (where she is a citizen and resident), and which limited her ability to defend herself from further harmful disclosures. There is no indication in the record that the district court considered the effect of these laws or the extent to which its ruling removing the redactions necessary to preserve Doe 171's privacy and integrity compromised international comity interests.

## SUMMARY OF THE ARGUMENT

Nonparty Doe 171 is a native-born citizen and current resident of ████████ ███████ She was never a party to the proceedings below, but has now been forced to participate in these post-judgment proceedings in order to oppose the unsealing of redactions that diminish her rights under the privacy and human rights laws applicable to her, which are more stringent than those applicable in this Circuit and upon which she has relied for the past two decades.

To its credit, the district court below recognized its responsibility ████████ ████████████████████████████████████████████████████

███████ and it acknowledged that, "just because 'some information relating to the documents in question has already been discussed on the public record or reported in the media does not mean that the concerned third parties have lost any remaining privacy interests in their contents." A-0216-18 (quoting *Gatto*, 2019 WL 4194569, at *8).

The district court, however, applied these principles only as to the redactions pertaining to other nonparties, but refused to apply them for the benefit of Doe 171. The district court's reasoning was based exclusively on its finding that "[n]umerous [] public sources" had identified Doe 171 by name as Ms. Maxwell's former employee after that information was disclosed when this Court unsealed the summary judgment record without providing Doe 171 any notice or opportunity to object. A-0217; CA-0167–74.

In ordering the removal of limited redactions necessary to prevent the public from falsely associating Doe 171 ███████████████████████████████ ████████████████████████████████████████████████████████ the district court erred for the following reasons:

First, the district court's ruling appears to be based on a misunderstanding that the disclosure of Doe 171's former employer obviated the need to consider applying any protective measures to preserve Doe 171's privacy and integrity from the disclosure of ████████████████████████. Contrary to the district

court's perception, however, the fact that Doe 171 had been identified as Ms. Maxwell's former employee did not justify the wholesale ███████████ ███████████████████████████████████████████ ████████████████████████████████████ – which is the farthest thing from the truth. *See, e.g.*, CA-0021 (witness in a confidential deposition conveying the unreliable and untrue hearsay narrative ████████████ ████████████████████████████ And, even if some redacted material has already been disclosed in other filings that can be accessed by individuals with a legitimate public interest in the information, the district court failed to weigh the substantial emotional harm, psychological trauma, and physical danger, *see* CA-0167–74, which are likely to stem from a trickle of gratuitous and duplicative disclosures that needlessly repeat Doe 171's ████████████████████ ██████████████████████████ *See, e.g.*, *Wiggins v. Natl'l Credit Union Admin.*, 2007 WL 2559941, at *8 (D.D.C. Jan. 30, 2007) ("Prior disclosure of personal information does not eliminate the privacy interest in avoiding further disclosure").

Second, the district court relied on a blanket finding that all of the redacted materials were contained in "judicial documents" which it deemed necessarily "important to the public's interest in monitoring federal courts' exercise of their Article III powers." A-0214:8-17. But that finding was also misguided. At least some

of the most sexually explicit and damaging redacted material was **not** relevant to any judicial function because it was only briefly submitted in connection with a pretrial discovery request that was voluntarily withdrawn within approximately one month. *Compare, e.g.*, CA-0021 ███████████████████████████████

███████████████████████████████████████████

*with*, *e.g.*, CA-0071 n. 4 ████████████████████████████████

██████████ And even the redacted material submitted in connection with filings that were not withdrawn before a judicial decision was rendered were still largely insignificant, and at most played a "negligible role in the performance of Article III duties." *Brown*, 929 F.3d at 49-50 (citing *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ("*Amodeo II*")).

Third, the district court failed to consider several factors necessary to conduct a "particularized" and "individualized" review that properly balanced the public and private interests at stake. For example, the district erroneously focused its analysis on the documents at issue as a whole, without appreciating that the relevant public and private interests hinged on the limited redactions narrowly tailored to preserve Doe 171's privacy and integrity. *See Olson v. Major League Baseball*, 29 F.4th 59, 92-93 (2d Cir. 2022) ("[A] district court should consider its ability to use redactions" to "address the privacy interests of . . . individuals . . . whose identities were not critical to the public's ability to understand" the document, "its relationship to

17

plaintiffs' claims, as well as to assess the district court's ruling"). Nor did the district court properly evaluate the low value of disclosing unreliable "hearsay" that "contain[s] 'misinformation'" which is both "untrustworthy" and "simply incorrect," *Amodeo II*, 71 F.3d at 1052, and comprised "deposition responses concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality." *Brown*, 929 F.3d at 48, n.22.

<u>Fourth</u>, the District Court erred in dispensing with a comity analysis by failing to even consider the deleterious implications of the conduct it required on Doe 171's lifelong right to anonymity from media intrusion that she is afforded pursuant to ▮▮▮▮▮▮▮▮▮▮ law.

## ARGUMENT

In this appeal, Doe 171 opposes the unsealing of limited redactions necessary to prevent her from being identified by name in connection with ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which were depicted in insignificant pretrial submissions that had no bearing on the litigation below and in which she was neither a party nor invited to participate in the depositions resulting in some of the sensitive disclosures that are the subject of this appeal.

For instance, within approximately one month after filing a motion to exceed the presumptive limit of ten depositions to depose several witnesses, ▮▮▮▮

18

███████████████████████████ Doe 171. CA-0071 n.4. But, in

support of her soon-to-be-abandoned request for relief, Giuffre submitted a redacted

confidential deposition transcript of a witness who conveyed a false hearsay

narrative in ███████████████████████████



CA-0042:16–0043:8. The witness admitted that her testimony was purely based on

hearsay ███████████████████████████

███████████████████████████

███████████████████████ CA-0043.

Those redactions—among others—have been vitally important to preserving

Doe 171's privacy as an "innocent third part[y]," without "unduly interfer[ing] with

the public's right to access judicial documents." *Olson*, 29 F.4th at 92-93 (quoting

*In re Application of Newsday, Inc.*, 895 F.2d 74, 80 (2d Cir. 1990)). But the district

court refused to exercise any of the "powerful tools" at its disposal to vindicate the

"the integrity of the judicial process," including those privacy interests of a nonparty resisting disclosure, for just a single reason. *Brown*, 929 F.3d at 47 n.13, 53. According to the district court, Doe 171 was not eligible for any protective measures merely because "public sources" had referred to her as being "employed [by] Ghislaine Maxwell." A-0217.

The district court's rationale and ultimate holding constituted an abuse of discretion infected by core factual findings which were clearly erroneous. *See In re New York Times*, 799 F. App'x 62, 64-65 (2d Cir. 2020) ("As to the validity of the district court's sealing orders, 'we examine the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion'").

## A. The District Court's *Ore Tenus* Order Was Based on an Erroneous Finding that Prior Disclosures Justified Additional Harmful Disclosures

The district court's *ore tenus* order hinges on its determination that Doe 171's privacy and integrity are not worthy of protection because there had been a public disclosure that Doe 171 was Ms. Maxwell's former employee. A-0217. But that unremarkable disclosure did not diminish Doe 171's interest in preventing repeated disclosures of ███████████████████████████████████████████ ████████████████████████████████ The district court's contrary determination was an abuse of discretion based on a clearly erroneous finding of fact.

20

First, it does not appear that all the redacted material pertaining to Doe 171 has been disclosed. Although the district court recognized its obligation █████ ████████████████████████████████████████████████████████ ███████████ it refused to protect Doe 171 merely because "public sources" had referred to her as Ms. Maxwell's former employee. A-0217–18. But regardless of whether the public knew the name of Doe 171's former employer, the redacted material ████████████████████████████ pertaining to Doe 171 that have not been disclosed.

As the district court itself implicitly acknowledged, this false equivalency was unwarranted: "[J]ust because 'some information relating to the documents in question already has been discussed in the public record or reported in the media'" (e.g., the identity of Doe 171's former employer) "'does not mean that the concerned third parties have lost any remaining privacy interests in their contents'" (e.g., the details concerning Doe 171's ██████████████████████████ ██████████████ A-0215–16 (quoting *Gatto*, 2019 WL 4194569, at *8). Thus, regardless of whether Doe 171 had been publicly identified as Ms. Maxwell's employee, she retained an "interest in maintaining the privacy of" fabricated details about ██████████████████, which is "undoubtedly a sensitive subject . . . warrant[ing] redactions" to prevent her "specific identit[y]" from being falsely associated with ██████████████████████████████████

21

███████████ *United States v. Silver*, 2016 WL 1572993, at *7 (S.D.N.Y. Apr. 14, 2016).

Second, the district court similarly failed to recognize that "[p]rior disclosure of personal information does not eliminate the privacy interest in avoiding further disclosure." *Wiggins v. Natl'l Credit Union Admin.*, 2007 WL 2559941, at *8 (D.D.C. Jan. 30, 2007). Doe 171 is a ███████████ who was never a party to these proceedings until after her privacy was decimated by the unsealing of the summary judgment record without notice or an opportunity to object. *See* CA-0167-74. To the extent that the district court's order pertains to redacted materials that have already been unsealed, then there is no reason to further impede Doe 171's ability to resume her private life without being subjected to a constant trickle of duplicative disclosures that continue to be released two decades after-the-fact. The fact that someone "might be able to figure out [her] identit[y] through other means . . . does not diminish [her] privacy interests in not having the documents disclosed." *Burke v. U.S. Dept. of Justice*, 1999 Wl 1032814, at *4 (D.D.C. Sept. 30, 1999). Anyone with a legitimate interest in redacted material that has already been disclosed can readily obtain the information from other filings, without needlessly subjecting Doe 171 to another round of unwelcome media frenzy and inspiring the attention of even more dangerous harassers, reverberating psychological trauma, and emotional harm by re-releasing documents bearing her name without redactions. CA-0167–74

22

**B.** **The District Court's *Ore Tenus* Order Was Based on an Erroneous Finding that the Redacted Material Was Important to the Public's Assessment of a Judicial Decision**

Rather than evaluate the public's interest in removing limited redactions which were narrowly tailored to prevent the identification of a particular nonparty by name, the district court erred by issuing a blanket prefatory statement which concluded that every pretrial submission pertaining to Doe 171 was necessarily "important to the public's interest in monitoring federal courts' exercise of their Article III powers." A-0214.

To begin, the district court failed to conduct the requisite "particularized" or "individualized review" necessary to appreciate that at least some of the redacted material was not relevant to any judicial function and thus did not give rise to any interest in public disclosure at all. Take, for example, the confabulated hearsay

█████████████████████████████████████████████████████████

█████████████████████████████████ *See* CA-0016 & CA-0021. Any marginal significance that this submission might have initially had at the time it was filed dissipated within approximately one month, when Giuffre abandoned the relief requested in her motion as to Doe 171. *See* CA-0068, CA-0070 & CA-0072 ████████████████████████████████████

"[T]he presumption" of public access "exists to monitor judicial <u>decision-making</u>," but here, "however, there [wa]s simply no decision to be made, no exercise

23

of the judicial power that c[ould] take place, and no court action for the public to monitor," meaning that the redacted material no longer affected any judicial function and was no longer entitled to any presumption of public access. *Giuffre v. Maxwell*, 2020 WL 133570, at *3 (S.D.N.Y. Jan. 13, 2020) ("If every document that comes a judge's attention after filing is 'relevant to the judicial function,' then practically every paper filed with the Court would be judicial in nature," which "flies in the face of the Court of Appeals' directive that 'mere filing of a paper or document with the court is insufficient to render that paper a judicial document'") (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")); *accord N. Jersey Media Group*, *Inc v. United States*, 836 F.3d 421, 435 (3d Cir. 2016) ("In light of its present lack of adjudicatory significance," the material "plays no part in the judicial function or process," and thus "is not a judicial record to which the common law right of access attaches").

To be sure, not all of the redacted materials were submitted in connection with motions that were ultimately withdrawn. But none of the documents in general— and especially none of the narrow redactions in particular—played anything more than a "negligible role in the performance of Article III duties," meaning that their "low presumption" of public access "'amounts to little more than a prediction of public access absent a countervailing reason.'" *Brown*, 929 F.3d at 49-50 (citing *Amodeo II*, 71 F.3d at 1050). The redacted materials are virtually uniformly unvetted

discovery documents submitted in connection with discovery motions and other insignificant pretrial motions which implicates only the most miniscule public interest. *See N. Jersey Media*, 836 F.3d at 435 ("[T]here is [no] presumptive right [of] public access" to "discovery motions and their supporting documents" because it "would make raw discovery, ordinarily inaccessible to the public, accessible merely because it had to be included in [discovery] motions").

**C.    The District Court's *Ore Tenus* Order Did Not Include a "Particularized" or "Individualized" Review that Balanced the Public Interest and Countervailing Private Interests Pertaining to the Disclosure of the Redacted Materials**

The district court's blanket analysis also failed to appropriately weigh the relevant public and private interests. This appeal does not implicate the sealing of any document in its entirety which might deprive the public of any substantive information necessary to evaluate the functioning of the federal judiciary. Rather, the only question is whether the district court erred in removing narrowly tailored redactions causing Doe 171 to be identified by name in connection ███████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████

Viewed at this appropriate level of generality, there is virtually no legitimate public interest in falsely identifying an absent foreign nonparty by name as ███████ ██████████████████████████ when those narratives could just as easily be

attributed to a nameless Jane Doe, as they have for the past 20 years or more. "From the public's perspective, the significance" of virtually all of the documents at issue "reside[d] in [their] factual allegations and not in [the] personal identity" of Doe 171. *Doe v. N.Y. City Housing Auth.*, 2022 WL 2072570, at \*2 (S.D.N.Y. June 9, 2022). Regardless of whether the substantive allegations of sexual abuse described in the **documents as a whole** "played an important role in" the outcome of the proceedings below," the "specific names . . . of individual victims" which were shielded by **narrow redactions** did not. *United States v. Belfort*, 2014 WL 2612508, at \*3 (E.D.N.Y. June 11, 2014).

On the other side of the same coin, the "privacy interests of innocent third parties should weigh heavily in a court's balancing equation," *id.*, as this Court and others have repeatedly and eloquently explained:

> Such interests, while not always fitting comfortably under the rubric "privacy," are a venerable common law exception to the presumption of access. Courts have long declined to allow public access simply to cater "to a morbid craving for that which is sensational and impure." *In re Caswell*, 18 R.I. 835, 836, 29 A. 259, 259 (1893). As the Supreme Court noted in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), courts have the power to insure that their records are not "used to gratify private spite or promote public scandal," and have "refused to permit their files to serve as reservoirs of libelous statements for press consumption." *Id.* at 598, 98 S.Ct. at 1312 (internal quotation marks and citation omitted) (collecting cases); *see also Stevenson v. News Syndicate Co.*, 276 A.D. 614, 96 N.Y.S.2d 751, aff'd, 302 N.Y. 81, 96 N.E.2d 187 (2d Dep't 1950).

*Amodeo I*, 71 F.3d at 1050-51. The district court did not—and could not possibly—articulate any legitimate public interest in monitoring the judicial process that outweighed Doe 171's compelling privacy interest in preserving the redactions necessary to protect her identity. *See Olson*, 29 F.4th at 92-93 ("[A] district court should consider its ability to use redactions" to "address the privacy interests of . . . individuals . . . whose identities were not critical to the public's ability to understand" the document, "its relationship to plaintiffs' claims, as well as to assess the district court's ruling"). Regardless of whether "public sources" may have indicated that Doe 171 "was employed [by] Ghislaine Maxwell," A-0217, she does not deserve to be falsely identified by name ████████████████████████, given that any legitimate public interest in the underlying information could be satisfied by use of a pseudonym rather than Doe 171's actual name.

This conclusion is bolstered by another fact that the district court failed to weigh in its balancing test—namely, that the most injurious redacted material amounts to little more than tawdry and false second-hand gossip that will be indelibly etched in the public sphere, shielded by the litigation privilege, and immune from any legal recourse that might allow Doe 171 to preserve her privacy and vindicate her reputation. *See Fossil Group, Inc. v. Angel Seller LLC*, 2022 WL 9447259, at *4 (E.D.N.Y. Oct. 14, 2022) ("'[S]tatements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely

privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding. New York courts have long recognized the litigation privilege as a defense to defamation claims'").

For example, according to an individual who did not ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████ There is zero indication of when Epstein told the story to the witness, zero indication the story was ever true, and zero indication that the story was accurately recalled. In short, the redacted material depicting ██████████████████████████ should never be disclosed because it is the lowest form of "hearsay" that "contain[s] 'misinformation'" which is both "untrustworthy" and "simply incorrect." *Amodeo II*, 71 F.3d at 1052. Both Epstein and the witness had reasons to fabricate or embellish the hearsay story, rendering it of "doubtful veracity" at every level, "possibly stemming from apparent personality conflicts." *Id*.

Finally, even if the redacted materials comprise statements by witnesses who did not intend to humiliate Doe 171 by conveying unreliable hearsay or providing false information, then that would provide even more reason to preserve the redactions. After all, this Court's "minimal redactions" of the summary judgment

record nevertheless encompassed redactions to "deposition responses concerning intimate matters where the questions were likely only permitted—and the responses only compelled—because of a strong expectation of continued confidentiality." *Brown*, 929 F.3d at 48, n.22. Some of the most damaging discovery materials that are the subject of this appeal consist of confidential disclosures, including the testimony provided in confidential depositions.

For example, Doe 171 was not invited, could not participate, and lacked any ability to object to the questions asked during confidential depositions implicating the most intimate information about ███████████ including the retelling of a false and vicious hearsay story alleging that, ████████████████████ ██████████████████ To the extent that any court would have permitted or compelled hearsay to be conveyed over Doe 171's objection, it is unlikely that it would have done so without "a strong expectation" that such salacious material would be treated as confidential, and thus it should remain confidential.

**D.** <u>**The District Court Erred by Failing to Consider International Comity**</u>

Though sealing orders, as explained above, are reviewed under a mixed standard of review, *see supra* at 20 (citing *In re New York Times*, 799 F. App'x at 64-65), this Court has imposed a "somewhat more rigorous" gloss on its review of cases touching on international comity concerns which "approaches *de novo* review" given the sensitivity of the subject which is "concerned with maintaining amicable working relationships between nations." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 422 (2d Cir. 2005).

Under any applicable legal standard, the district court's *ore tenus* order fails to reflect the obligation of "American courts [to] take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. Of Iowa*, 482 U.S. 522, 546 (1987); *accord Gucci Am. Inc. v. Weixing Li*, 768 F.3d 122, 139 (2d Cir. 2014) (quoting *Societe*, 482 U.S. at 543 n.27 (1987)) (International comity "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states").

Some courts—including lower courts within this Circuit—flexibly apply international comity principles to restrict public access to sensitive materials that

appear in court filings in order to accommodate foreign privacy interests that are consistent with American values, albeit more stringent than American courts might ordinarily be prepared to recognize on their own. *See, e.g., Strauss v. Credit Lyonnais, S.A.*, 2011 WL 4736359, at *5–6 (E.D.N.Y. Oct. 6, 2011) ("Continued protection of the bank records in court filings would . . . promote interests under the doctrine of international comity" given that "French bank secrecy laws prohibit the disclosure of materials" which "American courts and Congress have [also] recognized the importance of protecting"); *In re Terrorist Attacks on Sept. 11, 2001*, 2019 WL 3296959, at *5 (S.D.N.Y. July 22, 2019) (holding international comity required sealing of sensitive materials containing highly confidential information relating to a foreign government); *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399, at *14 (S.D.N.Y. Aug. 18, 2017) (sealing a report, commissioned by the ruler of political subdivision of a foreign state, because it contained "highly sensitive, traditionally nonpublic … information ... of a foreign government"). Under that more flexible standard, international comity militates in favor of protecting Doe 171's privacy and integrity to honor the foreign laws that provide greater protections to their citizens than American domestic law alone, as explained in more detail below.

Additionally, the extent to which the district court's application of domestic law eviscerates Doe 171's legal rights as a foreign citizen is sufficiently stark that

31

the same result obtains under a more wooden comity standard that this Court has applied in other cases requiring "a true conflict between American law and that of a foreign jurisdiction." *Yukos Capital S.A.R.L. v. Samaraneftegaz,* 592 F. App'x 28, 29 (2d Cir. 2015) (quoting *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1049 (2d Cir. 1996)). In short, under the district court's reasoning, the public's interest in accessing discovery materials and other non-dispositive court papers trumped Doe 171's privacy interest in maintaining the confidentiality of those sensitive and defamatory materials. But that outcome is squarely at odds with the rights and privileges that  affords to its citizens and residents living within its borders, such as Doe 171.

For instance, the laws applicable to Doe 171 in her country of origin, citizenship, and residence ███████████████████████████████████████████████ ████████████████████████████ CA-0167–74. Moreover, ████████████ which of course does not exist under United States law. CA-0167–74. Thus, the district court's ruling effectively violates Doe 171's right to prevent the publication of information that is likely to lead members of the public to identify the victim—known as "jigsaw identification"—and would give rise to criminal contempt penalties for those who violate its restrictions for which she lacks

any effective remedy. █████████████████████████████████

███████████████████████████████ Moreover, by perpetually releasing even

more sensitive materials even later after the events occurred with even less of a

connection to any legitimate public interest, Doe 171 harbors a substantial good-faith

concern that the district court's orders could eventually be construed to waive,

forfeit, compromise, threaten, or diminish her right to protection under the laws of

her home state through no fault of her own.

Though Doe 171 raised these concerns, there is no indication that the district

court considered them before issuing its *ore tenus* order. CA-0167–74. Notably,

Guiffre and the media intervenors argue that all of the sensitive material at issue is

already available from other sources, which would mean that the district court's

order to release duplicative copies of sensitive materials would present a purely

gratuitous and unnecessary risk of eroding Doe 171's rights in the country that she

calls home for no apparent purpose. Accordingly, vacatur and remand is required to

ensure that the district court considers the effect of the grave conflict between its

application of United States law and the victim protection laws that apply to Doe

171 as a citizen and resident of ████████████████. *Yukos Capital*, 592 F. App'x

at 29 (vacating order that did not contain any analysis as to whether a true conflict

between Russian and U.S. law existed).

## CONCLUSION

Doe 171 respectfully requests that this Court vacate the district court's November 18, 2022 *ore tenus* order to the extent that it unseals the redactions pertaining to Doe 171.

## STATEMENT REGARDING ORAL ARGUMENT

Doe 171 provides notice in an abundance of caution that she will submit an Oral Argument Statement within the filing of the last appellee's brief to reflect her desire to have an oral argument regardless of the preferences of any other party in accordance with Local Rule 34.1(a). Doe 171 respectfully submits that oral argument will benefit the parties and the Court in addressing the particularly sensitive personal and foreign-relations matters that are the subject of this appeal and are challenging to address in a fulsome manner in the context of sealed proceedings that are constrained to the briefs, as they were in the district court below.

Dated: February 16, 2023

Respectfully submitted,

s/    Jeffrey Gutchess

By:   JEFFREY W. GUTCHESS
      AXS LAW GROUP PLLC
      *Attorneys for Objector-Appellant*
        *John Doe 171*
      2121 NW 2nd Avenue, Suite 201
      Miami, Florida 33127
      (305) 297-1878
      jeff@axslawgroup.com

34

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,132 words, uses a monospaced typeface, and contains 544 lines of text.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word with 14 characters per inch and Times New Roman.

/s/ Jeffrey  Gutchess