# 22-3042-cv(L), 22-3050-cv(CON)

## United States Court of Appeals
### For the Second Circuit

VIRGINIA GIUFFRE,
*Plaintiff-Appellee,*

*v.*

SHARON CHURCHER, JEFFREY EPSTEIN,
*Respondents*,

*v.*

GHISLAINE MAXWELL,
*Defendant,*

*v.*

JOHN DOE 107, JOHN DOE 171,
*Objectors-Appellants*,

*v.*

JULIE BROWN, MIAMI HERALD MEDIA COMPANY,
*Intervenors-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**REDACTED BRIEF FOR
OBJECTOR-APPELLANT DOE 107**

Richard W. Levitt
Levitt & Kaizer
40 Fulton Street 17th Floor
New York, New York 10038
(212) 480-4000
*Attorneys for Objector-Appellant John Doe 107*

March 1, 2023

# <u>TABLE OF CONTENTS</u>

Preliminary & Jurisdictional Statement ............................................... 1

Issue Presented ............................................................................. 1

Summary of the Argument ................................................................. 2

Statement of the Case ...................................................................... 3

Standard of Review ......................................................................... 9

Argument ..................................................................................... 9

    A. The qualified right to public access ............................................... 10

    B. The documents at issue, to the extent they identify Doe 107, either
       should not be considered "judicial documents" at all or, at most,
       should be considered judicial documents afforded only a low
       presumption of access. ............................................................ 12

    C. The district court clearly erred when it found that Doe 107
       presented merely "generalized concerns of adverse publicity";
       rather, her concerns were specific and substantial, implicating
       not only her privacy but her safety, and requiring that sealing
       be continued. ........................................................................ 16

        1. The public interests in unsealing Doe 107's name is minimal;
          nearly non existent .............................................................. 17

        2. Doe 107's interest in continued sealing of her identity is
          Substantial ...................................................................... 19

Conclusion ................................................................................... 23

Certificate of Compliance ................................................................. 24

i

## **<u>Appendix</u>**

Notice of Appeal ........................................................................ A. 1

Docket Entries ........................................................................ A. 2

Transcript of Proceedings November 18, 2022 ............................................. A. 135

Doe 107's objections to unsealing ................................................... A. 152

Excerpt of Virginia Giuffre's 05/3/2016 deposition (Doc. 235-4) .............. A. 161

Virginia Giuffre's 05/31/2016 amended Errata Sheet (Doc. 235-12) .......... A. 165

Virginia Giuffre's 06/30/2016 Correspondence (Doc. 280-1) .................... A. 168

Virginia Giuffre's 07/20/2016 Correspondence (Doc. 321-5) .................... A. 180

Virginia Giuffre's Fourth Revised Disclosure (Doc. 423-4) ....................... A.186

Virginia Giuffre's Third Revised Disclosure (Doc. 249-13) ....................... A. 213

Excerpt of Virginia Giuffre's 01/16/2016 deposition (Doc. 363-7) ............. A. 237

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016) ............................................... 9

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ............................................... *passim*

*Bryan v. United States*, No. CV 2010-0066, 2017 WL 1347681 (D.V.I. Jan. 27, 2017) ............................................... 12

*In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318 (D. Conn. 2004) ............................................... 12

*Fulson v. NPC Quality Burgers, Inc.*, No. 18-2391-DDC-KGG (D. Kan. Apr. 24, 2019) ............................................... 19

*Mirlis v. Greer*, 952 F.3d 51 (2d Cir. 2020) ............................................... 11

████████████████████████████████████ ████████████ ............................................... 22

█████████████████████████████ ............................................... 21

███████████████████████████████ ............................................... 21

*Theallet* v. *H&M Hennes & Mauritz, L.P.*, No. 20 Civ. 2212 (GHW), 2020 WL 4194898 (S.D.N.Y. July 20, 2020) ............................................... 11

*United States v. Loera*, No. 09CR466BMCS4, 2017 WL 2821546 (E.D.N.Y. June 29, 2017) ............................................... 12

**Statutes and Other Authorites**

28 U.S.C. § 1291 ............................................... 1

Fed. R. Civ. P. 26 ............................................... 5, 6, 8, 9, 14, 15

### BRIEF ON APPEAL ON BEHALF OF
### APPELLANT DOE 107

### PRELIMINARY AND JURISDICTIONAL STATEMENT

Appellant Doe 107 appeals from a final order of the United States District Court for the Southern District of New York, entered November 18, 2022, ordering unsealing of certain documents filed in the underlying action of *Giuffre v. Maxwell*, 15 CV 7433 (LAP).[1]

A timely notice of appeal was filed on November 30, 2022 (A.1). On December 8, 2022, this Court entered an order staying the district court's unsealing order during the pendency of this appeal (AppDoc 48). This Court has jurisdiction to review the district court's final unsealing order pursuant to 28 U.S.C. § 1291.

### ISSUE PRESENTED

Did the district court make clearly erroneous factual findings and abuse its discretion when it ordered the unsealing of Doe 107's name and address, which would serve virtually no legitimate public interest but would put Doe 107 at substantial risk of serious physical injury or death?

---

[1]    All references herein to "Doc." are to the docket in SDNY Case No. 15-cv-7433; references to "AppDoc" are to this Court's docket (22-3042). References to "A." are to the Appendix to this Brief. The transcript of Judge Preska's order unsealing certain documents is reproduced at A.135.

## SUMMARY OF THE ARGUMENT

The documents ordered unsealed had been filed in the *Giuffre v. Maxwell*, 15 CV 7433 (LAP), in which Plaintiff Giuffre alleged that Defendant Maxwell had defamed her when she said Giuffre's allegations of child sex abuse were false. These documents were not filed as part of a summary judgment motion and so, at most, enjoyed only a "low presumption" of public access that could be overcome by countervailing facts militating in favor of continued sealing. Here, such facts were proffered by Objector-Appellant Doe 107, a non-party to the underlying action, who stated that, among other things, disclosing her name and address would subject her to a very real danger of physical harm or death, as the documents ordered unsealed identified her, among other things (and falsely, we assert) as having had sexual relations with Ms. Maxwell as well as witnessing sex acts between other named persons, which could place her in mortal danger in her culturally conservative home country of ███████. The district court ignored these proffered facts, instead concluding she Doe 107 offered no more than "generalized concerns of adverse publicity." The district court's factual findings were clearly erroneous and its grant of Respondent Miami Herald's motion to unseal Doe 107's name and address was an abuse of discretion.

## STATEMENT OF THE CASE

The underlying action in which the subject documents were filed was brought by Virginia Giuffre against Ghislaine Maxwell. Ms. Maxwell was convicted in *United States v. Maxwell*, Case No. 1:20-cr-00330 (S.D.N.Y. Dec. 29, 2021), of various sexual abuse offenses related to her involvement with the late Jeffrey Epstein. The civil Complaint, filed September 21, 2015, alleges (at Par. 1):

> This suit arises out of Defendant Maxwell's defamatory statements against Plaintiff Giuffre. As described below, Giuffre was a victim of sexual trafficking and abuse while she was a minor child. Defendant Maxwell not only facilitated that sexual abuse but, most recently, wrongfully subjected Giuffre to public ridicule, contempt and disgrace by, among other things, calling Giuffre a liar in published statements with the malicious intent of discrediting and further damaging Giuffre worldwide.

Doc. 1, Complaint, at 2, ¶1. After the Complaint was filed, the parties engaged in discovery, including depositions. Various motions were also filed, some of which attached discovery documents, many of which were sealed.[2] Throughout the course of the litigation, motions to unseal documents were filed by, among others, the Miami Herald, and ruled upon. In *Brown v. Maxwell*, 929 F.3d 41, 49-51 (2d Cir. 2019), a decision that post-dated the settlement of the underlying action (*see* Doc.

---

[2] The district court's Protective Order, entered March 18, 2016 (Doc 62), previous to the discovery at issue in this appeal, provided, *inter alia*, "Whenever a deposition involves the disclosure of CONFIDENTIAL INFORMATION, the deposition or portions thereof shall be designated as CONFIDENTIAL and shall be subject to the provisions of this Protective Order." (Doc. 62, ¶ 9).

916 (May 24, 2017, Stipulation of Voluntary Dismissal)), this Court vacated the district court's order denying unsealing of certain documents and remanded for further proceedings. The Court, however, mindful "that court files might be used to 'promote scandal arising out of unproven potentially libelous statements' … describe[d] certain methods courts can employ to protect the judicial process from being coopted for such purposes." *Id.*, 929 F.3d at 51 (footnote omitted).

On remand, the district court issued a protocol for considering whether to unseal documents and invited non-parties to file specific objections to unsealing. The court advised the parties that the court would undertake an independent review of whether to unseal the identified documents regardless of whether a particular non-party filed an objection. *See* Doc. 1044 (providing forms that non-parties should use to file their objections.)

Pursuant to the district court's protocol, Doe 107 objected to the unsealing of excerpts from the documents sought to be unsealed in which Doe 107 was identified. The following table (prepared by appellate counsel) extracts from the documents ordered unsealed references to Doe 107:[3]

---

[3]    All relevant documents, with references to the "Does" mentioned therein, are listed in Doc. 1247-1, Exhibit A ("Giuffre Exhibit as to Unsealing") (A.157). It appears that all the non-parties' sealed objections were filed under the umbrella of Document 1044. We have included in the Appendix (at A.161) a copy of the relevant documents that redacts Doe 107's name and address; we received these documents from prior counsel.

| # | Document | Description | Excerpt |
|---|----------|-------------|---------|
| 1. | 235-4 | | |
| 2. | 235-4 | Deposition of | |
| 3. | 235-12 | | |
| 4. | 249-13 | | |





| 5. | 280-1 | |
| 6. | 321-5 | |
| 7. | 363-7 | |
| 8. | 423-4 | |

Doe 107's filed objection to unsealing (A.152[5]) states:



---

[4]     Doe 107's name thereafter appears on the list that follows (A.183).

[5]     It appears that all the non-parties' sealed objections were filed under the umbrella of Document 1044. We have included in the Appendix a version of the relevant documents that redacts Doe 107's name and address.





A.155-56.

**The district court's ruling.** At a court appearance on November 18, 2022, the district court rendered an oral decision regarding those non-parties implicated by the unsealing request who had submitted objections to unsealing, including Doe 107 (Transcript of Proceedings, A.135). The court explained the nature of the inquiry:

> The documents at issue here were submitted in connection with discovery motions decided by Judge Sweet. The Court concludes that if they are judicial documents, with an exception or two, which I will note, to which the presumption of public access attaches. The motions at issue today are largely discovery motions and related papers which presumption of public access is somewhat less weighty than for a dispositive motion. It's nevertheless important to the public's interest in monitoring federal courts' exercise of their Article III powers.

*Id.* at A.137. The court noted that Ms. Maxwell, now that her criminal trial concluded, "takes no position one way or another on the unsealing," and Giuffre supported unsealing regarding 42 of the documents at issue and took no position with respect to 26. *Id.* at A.138.

Regarding Doe 107, the court ruled:

THE COURT: 107. With respect to Doe 107, the motion to unseal is granted. Doe 107 objects essentially on the grounds that unsealing would connect that Doe with this case and would unnecessarily invade Doe 107's privacy. But generalized concerns of adverse publicity do not outweigh the presumption of public access, and the information contained in these excerpts is not particularly salacious, as opposed to the some of the other information we have all seen. Accordingly, the Court concludes that the presumption of public access overcomes any generalized interest that Doe 107 might have.

*Id.* at A.146.

This appeal follows.

## STANDARD OF REVIEW

"In reviewing a district court's order to seal or unseal, we examine the court's factual findings for clear error, its legal determinations de novo, and its ultimate decision to seal or unseal for abuse of discretion." *Bernstein v. Bernstein Litowitz Berger & Grossmann LL*P, 814 F.3d 132, 139 (2d Cir. 2016).

## ARGUMENT

The district court's order should be vacated insofar as it unseals Doe 107's name and address in the relevant documents. The court's factual findings were clearly erroneous because they mischaracterized Doe 107's factual claims, failing accurately and fully to acknowledge Doe 107's specific grounds for opposing unsealing, including her fear of physical harm. And the court's ultimate decision, based on its clearly erroneous factual findings, was an abuse of discretion.

Accordingly, the district court's order should be vacated to the extent it unseals Doe 107's name and address.

**A. <u>The qualified right to public access</u>.** In *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), this Court discussed the analytical framework used to determine whether to seal or unseal particular documents, requiring consideration of (1) whether the qualified right to public access applies to the documents, and, if so, (2) the weight to be afforded to the presumption of access created thereby; and (3) whether, upon consideration of all relevant factors, sealing (or continued sealing) is appropriate. *Id.* at 49-50.

A qualified right to public access applies to "judicial documents." To be considered a "judicial document" a document must have been filed with the court and "must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* "A document is 'relevant to the performance of the judicial function' if it would reasonably have the *tendency* to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Id.*

If a document is determined to be a "judicial document" and the qualified right of access therefore applies, the court must then determine the weight to be accorded the resulting presumption of access. Trial evidence and documents submitted in

connection with summary judgment enjoy a strong presumption of access but documents playing only a slight role in the court's performance of its Article III duties, such as discovery-related documents, enjoy only a limited presumption, which can be overcome by a "countervailing reason":

> Thus, while evidence introduced at trial or in connection with summary judgment enjoys a strong presumption of public access, documents that "play only a negligible role in the performance of Article III duties" are accorded only a low presumption that "amounts to little more than a prediction of public access absent a countervailing reason." Documents that are never filed with the court, but simply "passed between the parties in discovery, lie entirely beyond the presumption's reach."

*Maxwell*, 929 F.3d at 49–50 (footnotes omitted).[6]

---

[6]     *See also Theallet* v. *H&M Hennes & Mauritz, L.P.*, No. 20 Civ. 2212 (GHW), 2020 WL 4194898, at *2 (S.D.N.Y. July 20, 2020):

> The Second Circuit recently summarized the three steps that the Court must follow to determine whether the presumption of public access attaches to a particular document and bars disclosure. *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). First, the Court determines whether the document is a "judicial document" — "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (internal quotation marks omitted). Second, the Court "proceeds to 'determine the weight of the presumption of access to that document.'" *Id.* (quoting *United States* v. *Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting [*Amodeo*, 71 F.3d at 1049]). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*

When making a final determination whether to unseal a judicial document, the court must balance the factors militating toward maintaining the sealing against the weight accorded the presumption of access. In performing this task, courts may take a "surgical approach," parsing the document and determining which portions should be disclosed and which should remain under seal:

> Mindful of the important interests at stake, the Court concludes that a surgical approach is appropriate which unseals just those particular portions of the record that are necessary to the Court's adjudication of the substantive rights of the parties and the Court's articulation thereof in its Opinion. In that regard, the Court has determined that the unsealing of certain records or portions thereof is necessary and appropriate.

*Bryan v. United States*, No. CV 2010-0066, 2017 WL 1347681, at *7 (D.V.I. Jan. 27, 2017) (footnote omitted); *see also United States v. Loera*, No. 09CR466BMCS4, 2017 WL 2821546, at *5 (E.D.N.Y. June 29, 2017) ("the Court will partially unseal the Third *Ex Parte* Submission and make it available to defendant's attorneys…"); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 325 (D. Conn. 2004) (referencing "*Ex Parte* Order dtd. 8/11/95 Partially Unsealing Compl.").

**B.** **The documents at issue, to the extent they identify Doe 107, either should not be considered "judicial documents" at all or, at most, should be considered judicial documents afforded only a low presumption of access**.

Applying the foregoing rules, the portions of the documents in issue, to the extent they identify Doe 107, should not even be considered "judicial documents" to which

the qualified right of public access accrues, because, although the underlying documents were filed on the docket, generally as part of discovery motions, the portions thereof that Doe 107 seeks to keep sealed – *i.e.*, those portions identifying her – had no relevance to those motions, let alone a tendency to "influence a district court's ruling on a motion or in the exercise of its supervisory powers." *Maxwell*, 929 F.3d at 49.[7]

Specifically, two of the documents excerpted in the table on page 5, (Nos. 1 and 2) relate to the deposition of Ms. Giuffre on May 13, 2016 (Docs 235-4; A.162-63), and another of the documents (No. 7) relates to Ms. Giuffre's deposition on January 16, 2016 (Doc. 363-7; A.238). The relevant excerpts from Ms. Giuffre's May 13 deposition identify Doe 107 as a person with whom Ms. Maxwell supposedly had sexual contact. This deposition was attached as Doc. 235-4, filed in support of Ms. Maxwell's motion to "Reopen Deposition of Plaintiff Virginia Giuffre." (Doc. 230). A review Ms. Maxwell's motion to reopen, however, leaves no doubt that Ms. Giuffre's deposition testimony, to the extent it identifies Doe 107, had no relevance whatsoever to that motion, which was based on the following arguments:

---

[7]     Relatedly, other sealed documents in this case, including discreet portions of particular documents, had previously been unsealed, either though prior motions to unseal or because they were admitted during Ms. Maxwell's criminal trial. *See, e.g.*, district court's decision, A.138 (noting, "much of the information that was sealed in this matter has since become public in the course of Ms. Maxwell's criminal trial.).

I. PLAINTIFF'S PRODUCTION OF KEY DOCUMENTS AFTER HER DEPOSITION NECESSITATES ADDITIONAL EXAMINATION

> A. Plaintiff failed to identify her health care providers and produce their records prior to her deposition, despite this Court's order
> B. Plaintiff failed to produce emails form her iCloud and Hotmail accounts
> C. Plaintiff has failed to produce her employment records
> D. Plaintiff has failed to produce her education records
> E. Plaintiff has filed amended Rule 26 disclosures identifying new witnesses

II. PLAINTIFF'S COUNSEL INSTRUCTED PLAINTIFF NOT TO ANSWER RELEVANT, NON-PRIVILEGED QUESTIONS IN HER FIRST DEPOSITION

III. PLAINTIFF MADE MATERIAL CHANGES TO HER DEPOSITION THAT COMPLETELY CONTRADICT HER SWORN TESTIMONY

*Id.*

Likewise, the excerpts within the above Table to Ms. Giuffre's January 16, 2016, deposition names Doe 107 as a supposed witness to sex between Ms. Giuffre and a person whose name is omitted from the available copy of the deposition. This deposition was attached to Doc. 363-7, the Declaration of Alan Dershowitz, submitted in support of Professor Dershowitz's motion to unseal three documents, which appears from the redacted Dershowitz Declaration to relate to exhibits A, B and M thereto (corresponding to Docs 363-1, 363-2, and 363-M). Nothing in these, or other papers relating to Professor Dershowitz's motion,[8] suggests that the portions

---

[8]   Portions of these motion papers are redacted and we have therefore been unable to review them.

of Doc. 363-7 we seek to keep sealed – *i.e.,* Doe 107's identity – was of any relevance whatsoever to the court's exercise of its Art. III powers with regard to that motion.

The balance of the documents we seek to keep under seal are quotidian and did not implicate the district court's Art. III authority insofar as they relate to Doe 107: Doc. 235-12 (Table entry 3; A.165) relates to correspondence correcting the spelling of Doe 107's name; Doc 249-13 (Table entry 4; A.223), provides Doe 107's full name and address; Doc. 280-1 (Table entry 5; A.176), is correspondence providing Doe 107's last name as an applicable search term; Doc. 321-5 (Table entry 6; A.182), is email correspondence noting, ███████████████████████ ████████████████████████████████; and Doc. 423-4 (Table entry 8; A.197) provides Doe 107's name and address as someone with knowledge of Jeffrey Epstein's sexual trafficking conduct and interaction with underage minors, as part of Ms. Giuffre's Fourth Revised Disclosure Pursuant to Fed.R.Civ.P. 26.

None of the foregoing entries, to the extent they identify Doe 107, were relevant to any motion pending before the district court, and they therefore should not be considered judicial documents at all. But even if they were to be considered judicial documents, they were not submitted as part of a summary judgment motion and therefore enjoy, at most, a limited presumption of public access, which can be overcome by a "countervailing reason." *Brown v. Maxwell*, 929 F.3d at 49–50.

**C. The district court clearly erred when it found that Doe 107 presented merely "generalized concerns of adverse publicity"; rather, her concerns were specific and substantial, implicating not only her privacy but her safety, and requiring that sealing be continued.** In its oral decision ordering unsealing, the district court found that Doe 107's claims were "not particularly salacious" and presented no more than "generalized concerns of adverse publicity." (A.146). These factual findings were clearly erroneous. ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████ *See* A.156. The district court, in its decision, did not even acknowledge these specific factual assertions, which reflect a level of specificity unquestionably sufficient to rebut the (at most) "low presumption" of public access accorded the documents in question. *Brown v. Maxwell*, 929 F.3d at 49–50.

In its earlier decision in *Brown v. Maxwell*, this Court observed, with respect to summary judgment documents that are accorded a "strong presumption of access," that "continued sealing of the documents may be justified only with

specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* at 47 (inside quotation omitted). Examples of such countervailing values that may overcome even the strong presumption of access accorded to summary judgment documents, said the Court, include, among others, "the privacy interests of those who resist disclosure." *Id.* at 47, n.13. Here, the documents in question are <u>not</u> summary judgment documents and therefore carry, at most, a "low presumption" of disclosure that "amounts to little more than a prediction of public access absent a countervailing reason." *Brown v. Maxwell*, 929 F.3d at 49-50. Further, the facts conclusively demonstrate that the public interest in releasing Doe 107's name to the public is low whereas the reasons to protect her from such exposure are high, and Doe 107's proposed solution – unsealing the documents but redacting her identity – is narrowly tailored to accommodate the respective interests of all parties.

**1. <u>The public interest in unsealing Doe 107's name is minimal; nearly non-existent.</u>** When considering whether to unseal judicial documents over objection, the public interest in disclosure must be weighed against the objecting party's interest in continued sealing, applying the appropriate weight accorded the presumption in favor of disclosure. In this case there is little public interest in exposing to the public the heretofore sealed record to the extent it identifies Doe 107 beyond the public's simple curiosity in the aforementioned salacious, untested and,

17

Doe 107 asserts, untrue claims regarding what Doe 107 did and what she witnessed. Mr. Epstein is deceased, Ms. Maxwell has been convicted and sentenced, and the underlying civil suit has long since been settled. And so, what, precisely, is the public interest in disclosing the references to Doe 107 other than salacious curiosity? We say, let The Miami Herald publish their salacious so-called "facts" if they wish, but they should not be permitted to put a face and a name to them.

In its papers opposing Doe 107's motion for a stay pending appeal, Ms. Giuffre provides no argument at all in favor of unsealing other than that "This case is of great public interest"; and, "The litigation involved voluminous documents and testimony about Jeffrey Epstein's transcontinental sex-trafficking operation and documents concerning various public agencies' utter failure to protect and bring justice to his victims for nearly two decades"; and, "The public has a right to understand how and why the government failed Epstein's victims, and the lengths to which he and his co-conspirators went to discredit and silence their victims, including Ms. Giuffre." (AppDoc 30-1 at 18). These arguments for unsealing on their face are remarkably weak, and even less so with respect to Doe 107's identity. We cannot help but note the irony, however, in Ms. Giuffre's lament "concerning various public agencies' utter failure to protect and bring justice to his victims for nearly two decades," even as she insists for no good reason, on exposing Doe 107 to ridicule, embarrassment, and personal danger.

18

Intervenor Miami Herald Media Co., for its part, relies solely on the generalized interest in the public obtaining news (AppDoc 32). Although we do not discount this interest, The Herald's invocation of this generalized entitlement adds little to the discussion, as nothing suggests that there is a need to make public Doe 107's identity *in particular*, other than to put a (private) face and a (private) name to the portions of the relevant documents that discuss certain conduct and observations attributed to her.

**2**. **Doe 107's interest in continued sealing of her identity is substantial**. In contrast to the Miami Herald and Ms. Giuffre's generalized, anemic interest in unsealing Doe 107's identity, Doe 107's interests in maintaining the seal with respect to her identity are specific and substantial. These concerns implicate both her personal privacy and her safety. As one district court recently explained, avoiding the use of unsealing for "improper purposes" alone can justify continued sealing:

> The leading cases Identify some situations where public access properly gives way to the interest in sealing or other limited access. They include circumstances where the records are likely to be used for "improper purposes," including "'to gratify private spite or promote public scandal,'" or to "serve as reservoirs of libelous statements for press consumption." *Nixon*, 435 U.S. at 598 (quoting *In re Caswell*, 29 A. 259, 259 (R.I. 1893)).

*Fulson v. NPC Quality Burgers, Inc.*, No. 18-2391-DDC-KGG, at *4-5 (D. Kan. Apr. 24, 2019). Here, if the portions of the subject documents identifying Doe 107 are unsealed, Doe 107 will most certainly be exposed – as she put it in her objections

to unsealing – ██████████████████████████████████████

████████████████████████████████████████████████████

████████████ (Doc. 235-4; A.162-63); ████████████████

████████████████████████████████ (Doc. 363-7; A.238); and

her knowledge ███████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████. (Doc. 423-

4; A.197, 223).

Yet as substantial as are Doe 107's privacy concerns, her safety concerns are

even more concerning and compelling. As Doe 107's filed objections to unsealing

related, identifying her will place her in very real danger. ██████████████

█████████████████████████████████ A.156. And although

Doe 107 states that the allegations in the depositions are false, they will hold Doe

107 up to public ridicule, and real threats of violence, as unsealing these documents

will publicize the unproven claim that Doe 107 █████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████,

20



Additionally, should Doe 107 return to the disclosed address, Doe 107 would likely be subjected to intrusive press inquiries, and perhaps even vigilante scrutiny. As Doe 107's counsel suggests, ███████████████████████, who ███████████████████████, untested claims. *See* A.155 ███████████████████



.”); *see also e.g.,* ”) As further evidence of the substantial dangers confronting Doe 107, she .” A.156.

Neither The Miami Herald nor Ms. Giuffre, Respondents herein, so much as acknowledged Doe 107's very specific concerns regarding her personal safety in their opposition to Doe 107's motion for a stay pending appeal. Instead, they wrote as though Doe 107 never expressed such concerns. The Miami Herald characterized Doe 107's argument as arguing, in essence, "the contents themselves are not actually salacious or injurious to Doe 107's reputation, but simply being associated with the overall litigation is objectionable," (AppDoc 23 at 3), and Ms. Giuffre asserted that Doe 107 "expresses little more than a generalized aversion to being associated with Jeffrey Epstein and Ghislaine Maxwell, as well as a fear that unsealing would unduly invade her privacy." (AppDoc 30-1 at 11). Of course, this is not so, and Respondents' avoidance of Doe's 107's actual arguments is pregnant with the admission that her fears are genuine and strongly militate in favor of not releasing her identity.

## <u>CONCLUSION</u>

For all the foregoing reasons the order of the district court should be reversed and the Court should grant Doe 107's "narrowly tailored" (*Brown v. Maxwell*, 929 F.3d at 47) request that her name and address be redacted from any documents that are unsealed.

Dated: New York New York
      March 1, 2023

                        Respectfully submitted,

                        Richard Levitt
                        Levitt & Kaizer
                        40 Fulton Street, 17th Floor
                        New York, NY 1038
                        (212) 480-4000
                        rlevitt@landklaw.com
                        *Attorneys for Doe 107*

### **Certificate of Compliance**

I certify pursuant to FRAP 32 and Local Rule 32.1 (a)(4)(A) that that the foregoing brief was prepared on a computer using Microsoft Word. The proportionally spaced typeface, font size and spacing used was the following:

Name of Typeface: Century
Point Size: 14
Line Spacing: Double

The total number of words in the brief, based upon Microsoft word count, exclusive of the cover, table of contents, table of authorities, and signature is 5,736.

Dated:     February 28, 2023

Zachary Segal