# 22-3042-cv(L);
## 22-3050-cv(CON)

## In the
# United States Court of Appeals
## For the Second Circuit



VIRGINIA L. GIUFFRE,

*Plaintiff-Appellee,*

— v. —

SHARON CHURCHER and JEFFREY EPSTEIN,

*Respondents,*

— v. —

GHISLAINE MAXWELL,

*Defendant,*

— v. —

JOHN DOE 107 and JOHN DOE 171,

*Objectors-Appellants,*

— v. —

JULIE BROWN and MIAMI HERALD MEDIA COMPANY,

*Intervenors-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

# REPLY BRIEF FOR OBJECTOR-APPELLANT
# JOHN DOE 171
## (Redacted)

JEFFREY W. GUTCHESS
COURTNEY CAPRIO
AXS LAW GROUP PLLC
*Attorneys for Objector-Appellant John Doe 171*
2121 NW 2nd Avenue, Suite 201
Miami, Florida 33127
(305) 297-1878

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

REPLY ARGUMENTS

    A.   The District Court Abused Its Discretion by Neglecting to Consider International Comity Principles.................................................................2

    B.   The District Court Abused Its Discretion by Failing to Conduct a "Particularized" Review of the Relevant Public and Private Interests ......8

        1.   *The District Court Erred by Neglecting to Apply the Relevant Legal Standards Consistently to Materially Identical Facts* ...........8

        2.   *The District Court Erred by Neglecting Its Obligation to Ensure that Its Proceedings Are Not Hijacked for Punitive Purposes* ......14

        3.   *The District Court Erred by Neglecting to Explain Its Reasoning and Rejection of Valid Arguments Yielding Inconsistent and Unjust Results* ....................................................19

CONCLUSION .......................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>**Cases:**</u>

*Alexander v. City of Greensboro,*
2013 WL 6687248 (M.D.N.C. Dec. 18, 2013) ..............................................9, 15

*Alvarado v. City of New York,*
2006 WL 2252511 (E.D.N.Y. Aug. 5, 2006)......................................................5

*Andrews v. Barr,*
799 F. App'x 26 (2d Cir. 2020) ................................................................8, 20

*Dubicz v. Commonwealth Edison Co.,*
377 F.3d 787 (8th Cir. 2004)....................................................................21

*Giuffre v. Maxwell,*
No. 18-2868-CIV, DE 280 (S.D.N.Y. Aug. 9, 2019) ................................. 13-14

*Globe Newspaper Co. v. Superior Court for Norfolk County,*
457 U.S. 596 (1982) .............................................................................15

*Gucci Am., Inc. v. Weixing Li,*
768 F.3d 122 (2d Cir. 2014)...................................................................3, 7

*Hilton v. Guyot,*
159 U.S. 113 (1895) ...............................................................................4

*In re Terrorist Attacks on Sept. 11,*
2001, 2019 WL 3296959 (S.D.N.Y. July 22, 2019) ...................................... 4-5

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,*
412 F.3d 418 (2d Cir 2005)......................................................................4

*King v. Conde,*
121 F.R.D. 180 (E.D.N.Y. 1988) ..............................................................6

*King v. Kramer,*
763 F.3d 635 (7th Cir. 2014)...................................................................21

*Lara v. Board of Ed. of City of New York,*
   74 F.R.D. 565 (E.D.N.Y. 1977) ............................................................5

*Marcus v. Haaker,*
   481 F. App'x 19 20 (2d Cir. 2012) ....................................................4

*Next Investments, LLC v. Bank of China,*
   12 F.4th 119 (2d Cir. 2021) ...............................................................4

*Nixon v. Warner Comms., Inc.,*
   435 U.S. 589 (1978) ...........................................................................18

*Premier Growth Fund v. Alliance Capital Mgmt.,*
   435 F.3d 396 (3d Cir. 2006) ............................................................10

*Rita v. United States,*
   551 U.S. 338 (2007) .....................................................................19, 20

*Societe Nationale Industrielle Aerospatiale v. United States District Court,*
   482 U.S. 522, 543 n. 27 (1987) ..........................................................4

*Strauss v. Credit Lyonnais, S.A.,*
   2011 WL 4736359 (E.D.N.Y. Oct. 6, 2011) .....................................4

*United States v. Amodeo,*
   71 F.3d 1044 (2d Cir. 1995) .........................................................17, 18

*United States v. Paris,*
   2007 WL 1484974 (D. Conn May 18, 2007) ...................................15

*United States v. Sater,*
   2019 WL 3288389 (E.D.N.Y. July 22, 2019) ....................................5

*United States v. Temple,*
   404 F. App'x 15 (6th Cir. 2010) .......................................................21

*United States v. Thomas,*
   498 F.3d 336 (6th Cir. 2007) ............................................................20

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592 F.3d 954 (9th Cir. 2010)...............................................................10

*Wiggins v. Natl'l Credit Union Admin.,*
  2007 WL 2559941 (D.D.C. Jan. 30, 2007) .......................................10

*Wilmink v. Kanawha Cnty. Bd. of Educ.,*
  2006 WL 456021 (S.D.W.Va. Feb. 23, 2006) ........................ 9-10, 15

*Yukos Capital S.A.R.L. v. Samaraneftegaz,*
  592 F. App'x 28 (2d Cir. 2015) ..........................................3, 5, 8, 21

**Rules, Laws and Statutes:**

USCA 100 ................................................................ 4, 5, 8, 12, 13, 17, 19

USCA 110 ...............................................................................3, 6, 12, 21

USCA 128 ........................................................................3, 6, 11, 13, 15, 16

## <u>APPELLANT JANE DOE 171'S REPLY BRIEF</u>

According to Appellee Giuffre, "some names have been changed" in her accounts of the Jeffrey Epstein and Ghislaine Maxwell affair in order "to protect the[ ] privacy" of certain victims (and perpetrators) that she deemed helpful to her cause, causing severe trauma to Doe 171 by indelibly linking her name to sexually explicit incidents that did not actually involve her. Dkt. 1090-32 at 13. Meanwhile, Appellee Julie K. Brown continues to unapologetically disseminate those intentionally erroneous accounts—even when they are proven to be demonstrably and indisputably untrue—despite preaching that "each survivors trauma is often as fresh as the day it happened, and each woman's healing journey is their own." Julie K. Brown, *Perversion of Justice*, p. 182, at https://tinyurl.com/ycxnfnj8 (2021).

Appellees' opposition briefs attempt to reframe the core issues raised in Doe 171's initial brief seeking this Court's review of an *ore tenus* unsealing order. In particular, neither the district court nor Appellees justify overlooking the comity interests that militate against stripping a foreign nonparty like Doe 171 of the privacy protections applicable in her native home and current residence while providing preferential treatment to other similarly situated domestic nonparties like Doe 28 who happen to be allied with Appellee Giuffre. Moreover, neither the district court nor Appellees explain the reasoning of the *ore tenus* unsealing order that resulted in the starkly disparate treatment of such similarly situated nonparties, allowing

1

Appellees and one of those nonparties (Doe 28) to publicly disseminate false and pornographic accounts about the other nonparty (Doe 171) behind a veil of pseudonymity. And, as a consequence of the district court's imbalanced and inconsistent rulings, Appellees and Doe 28 have essentially hijacked the district court's docket to facilitate a fraudulent smear campaign against Doe 171.

It is by now common public knowledge that Epstein and Maxwell sexually terrorized countless young women. But there is no additional legitimate public interest—only an illegitimate prurient public interest—in continuing to misidentify Doe 171 **by name** as the victim of any identifiable acts of sexual assault. Any genuine public interest would be just as well served by disclosing any relevant substantive information while merely preserving the redactions necessary for Doe 171 to remain pseudonymous, which is all that she requests and the least that she deserves. The district court's unsealing order is unreasoned and unjust, requiring correction by this Court so that Doe 171 is no longer ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████.

## A.   The District Court Abused Its Discretion by Neglecting to Consider International Comity Principles

Although Appellees concede that the district court did not conduct a comity analysis, they do not make any persuasive arguments to justify such an oversight.

2

*See generally Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 140 (2d Cir. 2014) ("We . . . conclude simply that the district court on remand should conduct a comity interest in the first instance," and "give due regard to the various interests at stake"); *Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28, 29 (2d Cir. 2015) (summary order) ("We therefore vacate the [district court's] orders so that the district court may reconsider them after determining what impact, if any, comity may have").

First, Appellees Julie K. Brown and the Miami Herald acknowledge the existence of a conflict between the "foreign privacy laws" that protect Doe 171 in her home country and the "First Amendment precedent regarding the unsealing of judicial records," while erroneously insisting that " ███████ laws favoring privacy over free speech have no place in a U.S. court." USCA Dkt. 110 at 20-21 & n.2. Appellee Giuffre similarly implies that the district court was not required to consider whether its "unsealing order could be construed as a waiver of [Doe 171's] rights . . . within ██████████████████" because international comity principles only come into play for issues involving "distinctly foreign sovereign activities" such as "blocking statutes" and "international treaties." USCA Dkt. 128 at 22-23.

But the international comity inquiry is not nearly as circumscribed as Appellees portray it to be. Rather, it reflects a time-honored policy of deference "'to the legislative . . . acts of another nation, having due regard . . . to the rights of its

3

own citizens, or of other persons who are under the protection of its laws.'" *Marcus v. Haaker*, 481 F. App'x 19, 20 (2d Cir. 2012) (quoting *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)). In turn, domestic courts consider foreign privacy and privilege concerns similar to those at issue in this appeal under the banner of international comity, "which the Supreme Court described as 'the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.'" *Strauss v. Credit Lyonnais, S.A.*, 2011 WL 4736359, at *4–5 (E.D.N.Y. Oct. 6, 2011) (quoting *Societe Nationale Industrielle Aerospatiale v. United States District Court*, 482 U.S. 522, 543 n. 27 (1987)); *accord Next Investments, LLC v. Bank of China*, 12 F.4th 119, 131-32 (2d Cir. 2021) ("[W]hen a court order will infringe on sovereign interests of a foreign state, we eschew any categorical rule") (internal quotation marks omitted).

Thus, Appellees do not address many of the cases cited in Doe 171's initial brief establishing that it would have been appropriate for the district court to consider her privacy interests under ▮▮▮▮▮▮ law in its balancing analysis even in the absence of an applicable international treaty or blocking statute. *See, e.g.*, *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir 2005) (cited in USCA Dkt. 100 at 36) ("International comity" involves "the discretion of a national court to decline to exercise jurisdiction over a case before it when that case is pending in a foreign court"); *In re Terrorist Attacks on Sept. 11,*

4

*2001*, 2019 WL 3296959, at *5 (S.D.N.Y. July 22, 2019) (cited in USCA Dkt. 100 at 37) ("[I]nternational comity requires . . . 'highly sensitive' documents that contain 'traditionally nonpublic information' of a foreign government" to be filed under seal, even though "the[ ] sealing . . . cannot be justified with reference to the Vienna Convention"); *Yukos*, 592 F. App'x at 28-29 (cited in USCA Dkt. 100 at 38) (indicating that international comity analysis may have an impact on district court orders requiring a turnover of assets, compelling discovery, and awarding sanctions without reference to any international treaty or blocking statute).

Indeed, when considering whether to disclose sensitive materials, courts often acknowledge the comity principles that exist between other domestic jurisdictions, which should apply with equal or greater force when a foreign nation's laws squarely counsel in favor of protecting the privacy of its citizens who are victims of sexual abuse and squarely prohibit the revictimization of those innocent foreign nonparties living within their borders. *See, e.g.*, *Alvarado v. City of New York*, 2006 WL 2252511, at *2 (E.D.N.Y. Aug. 5, 2006) (quoting *Lara v. Board of Ed. of City of New York*, 74 F.R.D. 565, 576 (E.D.N.Y. 1977)) ("[A]lthough this court is not bound by state law protecting the secrecy of grand jury proceedings, 'a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost'"); *United States v. Sater*, 2019 WL 3288389, at *4 (E.D.N.Y. July 22, 2019) ("In the interests

5

of judicial comity, information sealed by the Southern District . . . should remained sealed here as well"); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("A magistrate need not ignore state privacy rules").

Second, Appellees misrepresent that it is "improper to raise" international comity principles in this Court because Doe 171 supposedly "did not make this argument before the District Court." USCA Dkt. 128 at 22; *accord* USCA Dkt. 110 at 20.

But, even Appellee Giuffre admits that Doe 171 did, in fact, "argue[ ] in an *ex parte* submission to the District Court that she was entitled to anonymity as a matter of ███████████ law," and even claims—based on a mischaracterization of a remark in a subsequent order that is **not** properly before this Court—that the district court purportedly "acknowledged" this argument without ruling on it. USCA Dkt. 128 at 22 n.8. Thus, although Appellee Giuffre's position on the issue remains hazy, Doe 171 fairly preserved the issue for review under any possible standard by expressly urging the district court to retain the minimal redactions necessary to preserve her privacy under the laws applicable to her as a citizen and resident of ███████████.

Nor was the issue fully fleshed out at the time the district court entered its *ore tenus* unsealing order, due to ongoing foreign legal proceedings relevant to the comity analysis. For example, one month **after** the district court issued its order, █

6

███████████████████████████████████████████████

Appellee Julie K. Brown misidentified Doe 171 by name in a book that swapped her identity with an alleged co-conspirator of Epstein and Maxwell. And, in contravention of the rights that Doe 171 would apply to her as a citizen and resident of ████████████, Appellees Julie K. Brown and the Miami Herald—with Appellee Giuffre's assistance—continue to seek out additional similarly false pretrial materials that misidentify Doe 171 by name for public dissemination regardless of whether they are true and regardless of the harm it will cause to Doe 171 in contravention of foreign laws and foreign judgments.

Finally, even if Doe 171 could have possibly done more to preserve this issue for review, this Court has emphasized that it is not appropriate to dispense with an international comity inquiry based on such a technicality. Instead, "the issue of comity is not forfeited simply if a party does not raise the issue or request." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 139-40 (2d Cir. 2014). Because the parties agree that no international comity analysis was conducted, vacatur and remand is warranted so that "the district court may, if it so chooses, allow the parties to supplement the record and offer additional argument" on the issue, before "set[ting] forth a thorough explanation of how it reached its conclusions" resulting in the disclosure of pornographic materials falsely associated with Doe 171 in

contravention of the laws of her home country. *Yukos*, 592 F. App'x at 29 (summary order).

## B. The District Court Abused Its Discretion by Failing to Conduct a "Particularized" Review of the Relevant Public and Private Interests

As Doe 171 explained in her initial brief, the district court's *ore tenus* order suffered from numerous errors, which Appellees do not squarely address in their opposition briefs.

### 1. <u>*The District Court Erred by Neglecting to Apply the Relevant Legal Standards Consistently to Materially Identical Facts*</u>

In their respective opposition briefs, none of the Appellees addressed a crucial observation underlying this appeal, which criticized the district court's *ore tenus* order for identifying Doe 171 by name and unsealing insignificant pretrial materials pertaining to her, while inexplicably reaching the opposite result to protect the privacy of other similarly situated nonparties, including Doe 28. USCA Dkt. 100 at 19-20 ("[T]he district court only applied" the legal standards offering privacy protections "as to other nonparties" (e.g., Doe 28), "but not as to Nonparty Doe 171"). Because the district court's analysis appears to have been applied "in a plainly inconsistent manner across similar situations," it amounts to "an abuse of discretion." *Andrews v. Barr*, 799 F. App'x 26, 27 (2d Cir. 2020) (summary order).

To illustrate the injustice of the district court's ruling, it is instructive to consider Doe 28, one of the nonparties identified in Doe 171's initial brief as having

received preferential treatment from the district court. And, using the same "jigsaw identification" tactics that Doe 171 unsuccessfully urged the district court to consider in fully weighing the harmful effects of its unsealing order, it is possible to use the partial disclosures about Doe 28 to deduce that her name is likely ███████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████.

Armed with the knowledge that Doe 28 is likely ██████████, there is not a single relevant distinction between her and Doe 171 that could possibly warrant the district court's disparate treatment of their respective privacy rights. At bottom, to use the district court's language, there is no legitimate public interest sufficient to overcome the countervailing private interests of these two nonparty "victims of sexual abuse" who "continue[ ] to experience trauma as a result of these events." A-0215-17. As other federal courts have recognized, the "[n]ames of alleged sexual assault victims 'serve no useful public or investigative purpose.'" *Alexander v. City of Greensboro*, 2013 WL 6687248, at *5 (M.D.N.C. Dec. 18, 2013) (quoting *Wilmink v. Kanawha Cnty. Bd. of Educ.*, 2006 WL 456021, at *3 (S.D.W.Va. Feb.

23, 2006))). The district court should have—but failed to—apply these standards equally as to ████████ (Doe 28) and Doe 171.[1]

Moreover, as the district court correctly recognized, neither ████████ (Doe 28) nor Doe 171 lost all privacy rights "just because 'some information'" about them had been "already discussed on the public record or reported in the media." A-0216; *accord Wiggins v. Natl'l Credit Union Admin.*, 2007 WL 2559941, at *8 (D.D.C. Jan. 30, 2007) ("Prior disclosure of personal information does not eliminate the privacy interest in avoiding further disclosure"). But, once again, the district

---

[1] The notable relevant similarities between ████████ (Doe 28) and Doe 171 pervade the district court's record and the public record amenable to judicial notice, even if they are not reflected in the district court's terse *ore tenus* ruling. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)) ("Courts may take judicial notice of publications," including "newspapers, magazines, and books," to "'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true'"). For instance, both Doe 171 and Doe 28 were ████████ ████████ And, although Doe 171 is similar to ████████ (Doe 28) in virtually all material respects relevant to the unsealing analysis, it bears emphasizing that they differ in other ways, including the fact that Doe 171 ████████ who has strenuously fought to maintain her privacy at all times, while ████████ (Doe 28) was ████████ ████████.

10

court failed to apply that principle even-handedly to ███████ (Doe 28) and Doe 171.

Specifically, the district court decided to strip Doe 171 of essentially any remaining privacy protection—while preserving Doe 28's privacy—based solely on the fact that "public sources . . . refer" to Doe 171 as a former employee of Maxwell. A-0217. But that fact is not unique to Doe 171, as it applies equally to ███████ (Doe 28), who has been repeatedly referenced in public sources as ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████████.

To be sure, Appellee Giuffre attempts to bolster the district court's order on appeal by adding that "prior publication of [Doe 171's] name" is "not the entirety of what is public" about her. USCA Dkt. 128 at 20-21. But even if it were appropriate to attribute this unexpressed finding to the district court, "the entirety of what is public" about Doe 171 does nothing to set her apart from ███████ (Doe 28), who has been the subject of public disclosures no less graphic than those pertaining to Doe 171. ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

███████. Yet, according to the district court's unreasoned *ore tenus* ruling, only ███████████ (Doe 28) is permitted to preserve her pseudonymity whereas Doe 171 is not.

Particularly given the district court's seemingly inconsistent analysis, it is no answer to say—as Appellees Julie K. Brown and the Miami Herald do—that Doe 171 purportedly "publicized much of the information that she now seeks to keep sealed" when she was forced to file a complaint for defamation based on a demonstrably untrue fabrication that Appellee Brown carelessly published about her in a book after Doe 171 had fought to maintain her privacy for several years. USCA Dkt. 110 at 17. Indeed, this is a shockingly callous argument for Appellee Julie K. Brown to advance, given that ███████████████████████████████ ███████████ she had erroneously identified Doe 171 by name in a book that conflated her identity with an alleged co-conspirator of Epstein and Maxwell, and Doe 171's complaint for defamation did not reveal any information that had not already been wrongfully published by Appellee Brown.[2]

---

[2] This argument advanced by Appellees Julie K. Brown and the Miami Herald also fails to account for the district court's failure to "weigh the substantial emotional harm, psychological trauma, and physical danger . . . which are likely to stem from a trickle of gratuitous and duplicative disclosures that needlessly" associate Doe 171 with "fabricated accounts of sexual abuse against her," even if it were true (which it is not) that all of the information Doe 171 seeks to redact had already been disclosed. USCA Dkt. 100 at 21-22.

In fact, even Appellee Giuffre implicitly acknowledges that Doe 171 took pains to avoid disclosing any facts in her complaint for defamation that had not already been disclosed by Appellee Julie K. Brown in the book that she published without Doe 171's knowledge or consent. *See* USCA Dkt. 128 at 24 (stating, without refuting, that "Doe 171 claims that she drafted the complaint to avoid disclosing any new details about herself"). This Court can see for itself that Doe 171's complaint does nothing more than rebut the indisputably defamatory assertions that already appeared in Appellee Brown's book, without coming close to publicizing the additional false information that she now seeks to keep sealed. *See generally* USCA Dkt. 100 at 7 ("[T]he district court" erred in ordering the unsealing of ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

In all events, the complaint for defamation that Doe 171 was forced to file after Appellee Brown falsely smeared her name in public could not possibly serve as the distinguishing factor in the district court's analysis. After all, the district court allowed ████████ (Doe 28) to preserve her privacy despite the fact that ████████

████████████████████████████████████████

████████ than anything Doe 171 revealed about herself in her complaint for defamation. *See generally, e.g.*, *Giuffre v. Maxwell*, ████████████████

13

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████

2. *The District Court Erred by Neglecting Its Obligation to Ensure that Its Proceedings Are Not Hijacked for Punitive Purposes*

While Appellees' opposition briefs prefer to focus on some of the superficially benign materials that would still be traumatic to Doe 171 if disclosed, they ignore the most lascivious information which the district court's *ore tenus* order would unseal for the first time and which consist of vicious uncorroborated lies about Doe 171 invented and disseminated by Appellee Giuffre and ████████ (Doe 28) for improper purposes.

Both sides of the balancing test—the public interest in disclosure and private interest in privacy—tilt decidedly in favor of the minimal redactions Doe 171 requested, particularly when the materials in question are so clearly damaging, so clearly unreliable, and so clearly untrue. For example, the gratuitous false narrative suggesting that ████████████████████████████████████████ ████████████████████████ needlessly found its way into the public record through the premeditated cooperative effort of Appellee Giuffre and ████████ (Doe 28):

14



CA-0042:16-0043:8.

Thus, Appellee Giuffre is incorrect to argue that it was appropriate for the district court to disregard the nonexistent public interest in disclosing gratuitous pornography about an innocent nonparty that is neither "credibl[e]" nor "tru[e]," and to ignore the countervailing privacy interests of an innocent nonparty seeking to redact her name from sexually explicit hearsay narratives that are patently "incorrect" and "fabricated." USCA Dkt. 128 at 21. To the contrary, Doe 171 is no less entitled than ▇▇▇▇▇▇▇ (Doe 28) to retain the minimal redactions necessary to prevent her name from being associated with **any** accounts of sexual abuse, even if they were even if they were credible and true, but especially because they are incorrect and fabricated. *See Alexander*, 2013 WL 6687248 at *5 (quoting *Wilmink*, 2006 WL 456021 at *3) ("Names of alleged sexual assault victims 'serve no useful public or investigative purpose'"); *United States v. Paris*, 2007 WL 1484974, at *2 (D. Conn May 18, 2007) (citing *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 607 (1982)) ("[T]he interests . . . in protecting" the identities

of sex-crime victims "outweighs the public's interest in access to this information" when "the public and press will be able to hear the[ir] testimony in full" and only their full names will be concealed).

Accordingly, the disturbing effect of the district court's order would be to re-victimize Doe 171 by making her an involuntary subject of this imagined pornography, even though it served no substantive purpose in the litigation; even though ████████ (Doe 28) admits that ████████████████████████; and even though Doe 171 merely requests that her name be redacted from this false account because identifying a particular alleged sexual assault victim by name adds absolutely nothing of value to the public record, but is instead designed to cause her embarrassment and trauma to advance a public relations campaign by Appellees who purport to honor victims' rights.[3]

The district court's blanket unsealing order, in other words, does not reflect any consideration of most of Doe 171's arguments or the real-world consequences of its ruling. Yet, despite Appellees' concession that "the Court's mandate is to undertake a particularized review of each document" to "determine whether the countervailing interests rebut the presumption" of public access, USCA 128

---

[3] If Appellees and ████████ (Doe 28) truly believe that the public would be served by disseminating a contrived pornographic narrative about Doe 171, then they remain free to repeat their lies in any public forum without laundering them through the district court's proceedings in an effort to shield themselves under the protection of the litigation privilege against defamation.

at 21-22, they do not rebut any of the precedent or argument advanced in Doe 171's initial brief establishing that the district court did not conduct a particularized review which was required to consider whether her countervailing privacy interests overcome the public interest in disclosing the lowest form of "hearsay" that "contain[s] 'misinformation,'" which is "untrustworthy," "simply incorrect," and stems "from apparent personality conflicts" that render it of "doubtful veracity." USCA Dkt. 100 at 34 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1052 (2d Cir. 1995) ("*Amodeo II*").

In short, Appellees and ▮▮▮▮▮▮ (Doe 28) seemingly aim to punish Doe 171 based on their misguided perception that Doe 171 was not sufficiently supportive of their **public** efforts to prosecute Maxwell in court and persecute her in the media. Though it may be true that Doe 171 is too traumatized to publicize her experiences, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But apparently that is not enough Appellees and ▮▮▮▮▮▮ (Doe 28), who are perpetuating the abuse that Epstein and Maxwell started, by inserting false narratives about her into the public record and pursuing their public disclosure to cause her shame and place her in danger.[4]

---

[4] This campaign of abuse by Appellees and ▮▮▮▮▮▮ (Doe 28) is particularly misguided given how little Doe 171 could contribute to the public discourse given

Doe 171 has already suffered enough at the hands of Epstein and Maxwell, and there is no persuasive reason for the district court to endorse the efforts of Appellees and ███████ (Doe 28) to exacerbate her trauma by falsely associating her name with specific fabricated incidents of alleged sexual abuse that did not involve her. In doing so, the district court failed to "insure that [its] records are not 'used to gratify private spite or promote public scandal,'" or "to serve as [a] reservoir[ ] of libelous statements for press consumption." *Amodeo II*, 71 F.3d at 1050-51 (quoting, *inter alia*, *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 598 (1978)).

In the end, the sexualized narratives that litter the district court's docket do not advance any genuine public interest while ████████████████████ ████████████████████████████████████████████████ ██████ the emotional trauma and legal fallout of the persistent efforts to breach her right to privacy under the laws of her home country for improper purposes.

One of the many unfortunate legacies of Jeffrey Epstein and Ghislaine Maxwell's sex trafficking ring is that it ignited a tawdry media blitz that turned some

---

her limited involvement with any matter of public interest. For example, her experiences do not resemble those of Appellee Giuffre, who the government identified as a participant in the genesis of "the pyramid scheme phase of [Maxwell] and Epstein's abuse of teenage girls" by "br[inging] other teenage girls to Epstein's Palm Beach house." *United States v. Maxwell*, No. 20-CR-0030, DE 670 at (S.D.N.Y. June 22, 2022) (sentencing memorandum).

victims (like Appellee Giuffre and Doe 28) into abusers themselves to serve their own interests. The district court abused its discretion by issuing an unbalanced unsealing order that only protects the privacy of the domestic nonparty victims on one side of the feud (e.g., Doe 28) while tying the hands of another similarly situated foreign nonparty victim (i.e., Doe 171) behind her back. *See generally* USCA Dkt. 100 at 15-16 & n.2.

3.   *The District Court Erred by Neglecting to Explain Its Reasoning and Rejection of Valid Arguments Yielding Inconsistent and Unjust Results*

While a district court may permissibly favor "brevity" and "conciseness" when "the reasons" for its decision are "clear" from the "context and the parties' prior arguments," this is not such a case. USCA Dkt. at 24-25 (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). Accordingly, the district court abused its discretion in refusing to "expressly address certain facts and argument" that, if appropriately addressed, would have likely led it to retain the minimal redactions over material that was entitled to little-to-no presumption of public access but are crucial to preserving an innocent foreign nonparty's health and safety while respecting international comity principles. *Id*.

The facts and arguments that Doe 171 raised, but which the district court did not expressly address, included, among others: (a) the uniquely fleeting public interest in access to sensitive judicial documents that were withdrawn immediately after their filing, USCA Dkt. 100 at 29-31; (b) the uniquely strong countervailing

19

privacy interest in retaining the minimal redactions necessary to preserve the pseudonymity of victims who are at risk of being publicly exposed for improper punitive purposes, *id*. at 31-35; and (c) the uniquely powerful international comity concerns that fortified Doe 171's countervailing privacy interests, *id*. at 36-39. The district court's resolution of these issues could not possibly be a foregone conclusion, and thus its conclusory analysis leaves Doe 171, this Court, and the public "unsure as to whether [it] adequately considered and rejected [Doe 171's] arguments . . . or whether it misconstrued, ignored, or forgot [her] arguments." *United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007). Nor did the district court explain the reasoning that led it to reach seemingly disparate results across substantively similar situations. *See Andrews*, 799 F. App'x at 27 (summary order).

In fact, the preferential treatment that ███████ (Doe 28) enjoyed only heightens the reasonable concern that the district court failed to apply the bedrock principles requiring it to provide an indication that it "considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita*, 551 U.S. at 356 ("Confidence in a judge's use of reason underlies the public's trust in the judicial institution," and a "public statement of those reasons helps provide the public with the assurance that creates that trust," and "helps th[e] [adjudicatory] process evolve"). Although "the district court was unpersuaded" by Doe 171's arguments, "without any analysis by the district court as to how it reached

20

that result," it is impossible to "properly review its conclusions," requiring reversal. *Yukos Cap. S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 28, 28–29 (2d Cir. 2015).

Nor would this Court be alone in rejecting Appellees' suggestion that it is appropriate to rubber stamp a district's blanket order that does not "explicitly acknowledge" essentially any of Doe 171's meritorious arguments in favor of minimal redactions necessary to preserve her remaining shreds of privacy. *United States v. Temple*, 404 F. App'x 15, 20 (6th Cir. 2010); *King v. Kramer*, 763 F.3d 635, 643-44 (7th Cir. 2014) (quoting *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792-93 (8th Cir. 2004)) ("A district court that gives 'insufficient reasons' for its equitable decision," which is stated "'only in the most conclusory of terms,' . . . abuses its discretion").[5]

---

[5] While recognizing that they "have not seen" all of Doe 171's objections "submitted to the court under seal" and *ex parte*, Appellees nevertheless attempt to criticize the strength of those objections. USCA 110 at 20. But that is a disingenuous argument given that Doe 171 has received inconsistent guidance that reasonably deteriorated her confidence that any party or court involved in this litigation will honor its promises and obligations to protect the private information necessary to more fully elucidate her arguments. For example, the first communication Doe 171 received from the district court represented that she "will not be identified in any court filing," Dkt. 1044, which later turned out to be untrue when the district court's *ore tenus* unsealing order identified her by name as Doe 171, thereby compromising her privacy even in materials that were intended to remain redacted. Similarly, despite numerous promises that her *ex parte* submissions would not be revealed, Appellees Julie K. Brown and the Miami Herald continue to aggressively demand the public disclosure of those *ex parte* submissions to this day. As a result of these mixed signals, Doe 171 reasonably fears introducing new supporting facts that would further erode her privacy rights in ███████████████ if they were disclosed.

## CONCLUSION

Doe 171 respectfully requests that this Court vacate the district court's November 18, 2022 *ore tenus* order to the extent that unseals the redactions pertaining to Doe 171.

Dated: May 10, 2023

Respectfully submitted,

s/ _____

By:  COURTNEY CAPRIO
     JEFFREY W. GUTCHESS
     AXS LAW GROUP PLLC
     *Attorneys for Objector-Appellant*
     *John Doe 171*
     2121 NW 2nd Avenue, Suite 201
     Miami, Florida 33127
     (305) 297-1878

23

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS
AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B) because:

   This brief contains 5,511 words, excluding the parts of the brief exempted by Fed.R.App.32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type style requirements of Fed.R.App.P32(a)(6) because:

   This brief has been prepared in Proportionally-Space typeface using Microsoft Word, in Times New Roman, Font Size 14.